CHARLES L. MAKWINSKI, PLAINTIFF-APPPELLANT, v.
STATE OF NEW JERSEY, BOARD OF COMMISSIONERS,
CONSOLIDATED POLICE AND FIREMEN'S PENSION
FUND, DIVISION OF PENSIONS, DEPARTMENT OF THE
TREASURY, DEFENDANT-RESPONDENT.

Argued January 23, 1978—Decided May 9, 1978.

*Mr. Steven D. Altman* argued the cause for appellant (*Messrs. Benedict, Orban* and *Altman,* attorneys).

*Ms. Prudence H. Bisbee,* Deputy Attorney General argued the cause for respondent (*Ms. Erminie L. Conley,* Deputy Attorney General, of counsel; *Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. The issue presented in this case is whether a police officer, after 33 years of honorable service, forfeits his right to a pension upon conviction for misconduct in office, which occurred in his 34th year of service.

Appellant Charles L. Makwinski was appointed a police officer in the Borough of Carteret on May 1, 1937. In 1959, after 22 years of service, he became the Chief of Police in that community and continued in that capacity until the events hereinafter set forth.

On October 10, 1974, Makwinski was indicted for misconduct in office which allegedly occurred between June 1970 and April 1971. In January 1975 he filed an application for retirement under *N. J. S. A.* 43:16–1 to be effective March 1, 1975. He went to trial on the criminal charges in March

1975 and on March 11, by jury verdict, was found guilty of the charge. Judgment of conviction for misconduct in office was entered on April 21, 1975 and sentence of a $250 fine without probation was imposed. The judgment recites that there was "no personal gain" involved.

Following a pension hearing, Makwinski's application for retirement was denied on July 2, 1975 by the Consolidated Police and Firemen's Pension Fund Commission on the ground that the requisite of "honorable service" had not been met. On appeal, the Appellate Division, although it found the result to be "harsh," felt constrained to affirm under existing case law. Makwinski's further appeal to this Court is by virtue of our grant of certification. 74 N. J. 278 (1977).

Makwinski's conviction for misconduct in office had this background. He was a member of the Knights of Columbus, a religiously oriented fraternal and charitable organization which owned a building in Carteret. The building was used by the Knights of Columbus for its activities. However, its meeting hall in the building was also lent out free of charge to numerous community groups who used it regularly. They included the Police Benevolent Association, Boy Scouts, Girl Scouts, Police Athletic League, Senior Citizens Groups and the Carteret Jaycees. In addition, the Carteret Police Department and the Middlesex County Prosecutor's Office used the hall, also without charge, for in-service training extending over periods of six weeks.

In the spring of 1970 a fire damaged a rear portion of the building and meeting hall and Makwinski became chairman of the rebuilding committee. In the course of repairs to the building, a Carteret police officer, Edward Brechka by name, performed some carpentry work on the building. Brechka was not compensated for this work, but some of it was performed while he was on duty as a police officer. Makwinski was aware of the work being done by Brechka and that some of it was being performed "on borough time." The charge of misconduct is bottomed on Makwinski's using

an employee under his command for private gain at public expense.

The retirement statute under which Makwinski filed his application provides in pertinent part:

* * * [A]ny active member of a police department * * * who shall have served honorably in [such] department for a period of twenty-five years * * * shall, on his own application be retired on a service retirement pension * * *.

The statute does not expressly require that honorable service continue to the date of the application for retirement. Nevertheless, it has been consistently held that even though a person serves honorably for the minimum number of years set forth in the statute no vested property right to a pension accrues. The requirement of honorable service has been held to continue during the entire period of active service. See *Plunkett v. Pension Commrs. of Hoboken*, 113 *N. J. L.* 230 (Sup. Ct. 1934), aff'd 114 *N. J. L.* 273 (E. & A. 1935); *Hozer v State, etc., Police & Firemen's Pension Fund*, 95 *N. J. Super.* 196 (App. Div.), certif. den. 50 *N. J.* 285 (1967).

The rationale underlying these decisions is that a retirement pension is an inducement to conscientious and efficient public service which inducement would be immeasurably lessened if the employee could assert an indefeasible claim to the pension simply because the dishonorable conduct occurred after the employee had served the minimum number of years of service. *Plunkett, supra,* 113 *N. J. L.* at 232; *Ballurio v. Castellini*, 29 *N. J. Super.* 383, 389 (App. Div. 1954).

 Generally, disenfranchisement of pension rights is found in cases where the criminal conduct touches the administration of the public employee's office or position, or where the conduct involves moral turpitude. *Gauli v. Trustees Police & Firemen's Ret. Syst.*, 143 *N. J. Super.* 480, 482–483 (App. Div. 1976). In *Plunkett, supra,* a fireman who had served honorably the required minimum years

of service was denied a pension because thereafter he had embezzled funds from the Firemen's Relief Association. In *Hozer, supra,* the police officer was convicted of having unlawfully and intentionally, over a five year period, neglected and omitted to perform his public duties with regard to two bookmaking premises even though he had knowledge of the unlawful activities. *Fromm v. Bd. of Dir. of Police etc. Ret. Syst.,* 81 *N. J. Super.* 138 (App. Div. 1963) involved the denial of a pension to a police officer based on his conviction of some 17 charges of altering and downgrading traffic tickets. A city employee was denied retirement on pension in *Ballurio, supra,* because of his conviction of the crime of abortion, even though he satisfied the statutory requirements of age and service.

The instant case is unique on its facts. The conduct charged to Makwinski did touch the administration of his office. Indeed, his conviction is for misconduct in office. Nevertheless, there was no personal gain involved as the judgment of conviction states, so that the conduct involved cannot be said to be venal in that sense. The critical question is whether Makwinski's actions constituted dishonorable service within the intendment of the statute and cases interpreting it with his consequent forfeiture of pension rights. We think not.

The record shows that the meeting hall in the Knights of Columbus building was not only used free of charge by numerous community groups, but also was used without charge by the Carteret Police Department and the Middlesex County Prosecutor's Office for in-service training activities extending over periods of six weeks. There was testimony that the repair work to the building after the fire was considered a community project and that many persons, members as well as non-members of the Knights of Columbus, "pitched in."

At the pension hearing it was conceded that Makwinski's conduct was improper. However, it was contended that his indiscretion was caused by his concern for the community

and the betterment of Carteret. We conclude that his motive and intent must be weighed in the balance.

It is asserted on Makwinski's behalf that while the sentence on his criminal conviction was a $250 fine without probation, he stands to lose pension rights worth more than $150,000 if the ruling of the pension commission is upheld.

In this State misconduct in office is established by showing the willful violation of a prescribed duty. Corrupt motive or intent (*mens rea*), is not an essential element of the offense. *State v. Weleck,* 10 *N. J.* 355 (1952) ; see *State v. Savoie,* 67 *N. J.* 439 (1975). Limiting our ruling to the unique facts and circumstances of this case, our conclusion is that while Makwinski was undoubtedly guilty of misconduct in office, his misguided actions did not involve moral turpitude and cannot be held to be dishonorable service within the intendment of the statute and cases so as to require a forfeiture of his pension rights. *State Bd. of Medical Examiners v. Weiner,* 68 *N. J. Super.* 468, 484 (App. Div. 1961), notes "the elasticity of the phrase [moral turpitude] and its necessarily adaptive character, reflective at all times of the common moral sense prevailing throughout the community." *Cf. Tolan v. Murphy,* 39 *A. D.* 2d 197, 333 *N. Y. S.* 2d 296, 298 (App. Div. 1972).

The judgment of the Appellate Division is reversed and the case remanded to the Pension Fund Commission with directions to grant Makwinski's application, the amount thereof to be based on his service to June 1970, the date his misconduct in office commenced. While we hold that his actions did not constitute dishonorable service requiring forfeiture of his pension, he may not benefit pension-wise from service constituting misconduct thereafter.

PASHMAN, J., concurring. Every rule has its exception and no word more aptly describes this case. Here, the Court has determined that Chief Makwinski's conduct was not so egregious as to constitute the dishonorable service which would require total forfeiture of his pension. However, as

the Court observes, the fact pattern in this case is "unique." See *ante* at 91. Not only was Chief Makwinski's misconduct free of venal motivation, it was specifically directed toward the betterment of the community. The Knights of Columbus Meeting Hall, which Makwinski had Officer Brechka repair while he was on duty, was a community center in the true sense of the word. It was used free of charge by numerous groups, including many charitable organizations and the Carteret Police Department. As the opinion of the Court points out, the repair work was a community project which was contributed to by many persons, including numerous nonmembers of the Knights of Columbus. See *ante* at 91.

An employee's lack of an improper motive for his misconduct will not automatically preclude his service from being considered dishonorable. Nevertheless his motivation is a valid factor to be weighed. We are not encouraging a group of modern-day "Robin Hoods." The subjective belief of a wrongdoer will not protect his pension where he acts outrageously. However, the Chief's concern for the speedy repair of the meeting hall is readily understandable, though his choice of the means to this end was certainly wrongful.

The paramount importance of public employees acting honestly in accordance with the public trust placed in them is self-evident. I fully support the rule that dishonorable service requires total forfeiture of pension rights, even one which has "vested" after 25 years of honorable service. However, Makwinski's service was not rendered dishonorable for purposes of this principle by this single, isolated improper act. Yet, plaintiff's misconduct was serious enough to require our strenuous disapproval, and we trust that our terminating plaintiff's accrual of pension rights as of the date of his misconduct some five years before he retired will make that point. In a different factual setting, a public employee should not expect to retain any part of his pension.

Justice SULLIVAN joins in this opinion.

CONFORD, P. J. A. D. (temporarily assigned), concurring. I agree with the Court's decision that Makwinski be awarded a pension based upon his status of age and years of service as of June 1, 1970, as though a formal application for retirement had been made effective that day. While it is clear to me that the conduct resulting in his conviction for misconduct in office was dishonorable, the statute entitled him to a pension because he had previously served the minimum years of honorable service and attained the necessary age of entitlement to a pension under the statute. It is conceded by the defendants that Makwinski had satisfied those requisites by the indicated date, which was prior to the act of misconduct for which he was convicted. As I read the statute, it is irrelevant that *subsequent to* the accrual of the minimum requisites for the pension the applicant committed a dishonorable act, except that it is implicit that time of service after a dishonorable act cannot count in computing the amount of pension.

As of June 1, 1970, the applicable statute (*N. J. S. A.* 43:16–1) provided, pertinently:

* * * [A]ny active member of a police department * * * who shall have served honorably in the police * * * department for a period of twenty-five years and reached the age of fifty-one years *.* * shall, on his own application, be retired on a service retirement pension * * *.

The plain and unambiguous language of this statute requires honorable service only during the 25 years of service which (providing the age requirement is also met) qualifies the applicant for a pension. There is no reference to honorable service beyond that period. Yet a series of decisions in this State following the leading case of *Plunkett v. Pension Comm'rs of Hoboken*, 113 *N. J. L.* 230 (Sup. Ct. 1934) aff'd o. b. 114 *N. J. L.* 273 (E. & A. 1935), has interpolated into the statute a provision for total forfeiture of any pension if, even after the specified period of honorable service, the employee remains in service instead of applying for

retirement and *thereafter* commits a dishonorable act. *Walter v. Police & Fire, etc., Trenton,* 120 *N. J. L.* 39 (Sup. Ct. 1938); *Mount v. Trustees of Pub. Emp. Retirement Syst.,* 133 *N. J. Super.* 72 (App. Div. 1975); *Hozer v. State, etc., Police & Firemen's Pension Fund,* 95 *N. J. Super.* 196 (App. Div. 1967), certif. den. 50 *N. J.* 285 (1967). This Court has not heretofore been presented with the issue as to whether this rule should continue to be approved. For reasons to be set forth, I would overrule that line of cases and hold that they misconstrue the statute and apply notions of public policy which I believe discordant with basic justice.

There can be no doubt that had Makwinski applied for a pension on May 31, 1970 he would have had an absolute right to it. See *McFeely v. Board of Pension Com'rs.,* 1 *N. J.* 212, 216 (1948). He had worked for 33 years to earn it. Presumably his financial planning, savings and insurance were geared to the expectancy of the pension. Upon his death after retirement his widow and surviving children would share in the pension. *N. J. S. A.* 43:16-3 (b). What considerations of justice or public policy could warrant the absolute forfeiture of those expectancies when the policeman, instead of retiring and vesting his rights, continues in the service and thereafter, no matter how soon or late, commits an act constituting dishonorable service, no matter how minor? I do not perceive any, absent express legislative directions for forfeiture in those circumstances.

I turn to the reasons for the indicated result set forth in the cases. In *Plunkett, supra,* it was stated: "The inducement for efficient and conscientious service, after the member attained the age of fifty years, would be immeasurably lessened, if he could, in the event of a conviction of charges of misconduct, insist that his dismissal be accompanied by the statutory pension." 113 *N. J. L.* at 232. In *Walter, supra,* the court said: "A pension is, in effect, but the taxpayers' reward, given pursuant to legislative mandate, for honest and efficient service. * * * To bestow that reward upon one

whose record of public service is marred by a conviction for malfeasance in office would be to place a premium upon dishonesty and inefficiency * * *." 120 *N. J. L.* at 42.

It must first be noted that the underlying assumption of the established line of cases in this area that a public pension is a state reward or sovereign gratuity has been replaced by "the more modern concept that they [pensions] are some form of delayed wages or salary to compensate the employee during his declining years * * *." *Watt v. Mayor and Council of Borough of Franklin,* 21 *N. J.* 274, 279 (1956) ; and see *Mount v. Trustees of Pub. Emp. Retirement Syst., supra,* 133 *N. J. Super.* at 79. In the leading case of *Spina v. Consolidated Police etc. Pension Fund Com.,* 41 *N. J.* 391, 401 (1964), the late Chief Justice Weintraub, while eschewing any one comprehensive label for public pension rights, recognized that the government's contribution to a pension fund "[i]n part * * * compensates for services already rendered" and is "also a reward for services to be rendered over *the required minimum number of years* * * *." (emphasis added). "In both respects the contribution seems compensatory * * *." The employee's contribution was said "to be a sum already earned," although it need not necessarily be returned upon cessation of employment. *Id.* at 402.

While the Legislature has not changed the basic structure of the statutory language during the period of decision of the forfeiture cases cited above, a clue to its general attitude in the matter may be discerned from *N. J. S. A.* 43:11-1, which provides that no member of a police department "who shall have served honorably * * * for the required number of years to entitle him to retire * * * on a pension, shall be deprived of his pension privileges because of any violation of the rules and regulations established for the government of the department, but he may be fined, reprimanded or discharged." The section goes on to say that a member convicted of crime (presumably after the requisite years of honorable service) may be dismissed or punished in any manner provided by law. Nothing is said as to loss of pension in such

a case. Since violations of regulations may obviously rise to the degree of conduct not honorable, within *N. J. S. A.* 43 :16–1, and since *N. J. S. A.* 43 :11–1 would clearly prohibit denial of a pension for "any" regulation violation occurring after honorable service for the requisite number of years to earn a pension, the latter section appears to evince a general legislative policy contrary to the *Plunkett* line of cases.

I am in complete disagreement with the accuracy of such statements in the older cases, relied upon to justify the forfeiture rule, as that the allowance of a pension despite misconduct occurring after the passage of time in honorable service sufficient for a pension "would be to place a premium upon dishonesty and inefficiency * * *." *Walter, supra,* 120 *N. J. L.* at 42. The policeman in the situation under consideration obviously receives nothing of value *for* the subsequent act of dishonesty. For that he subjects himself to disgrace, removal and criminal prosecution. The allowance of the pension would be for the period of *honorable conduct.*

True, as pointed out in *Plunkett, supra,* 113 *N. J. L.* at 232, the rule I advocate may be regarded as lessening the "inducement" for honorable service after attaining the period of entitlement to the pension. But this begs the question as to whether, from that consideration alone, the Legislature can fairly be regarded, from the language of the statute, to have intended to add to the criminal and other sanctions for misconduct in office the total forfeiture for himself and his family of the pension the officer fully earned and which would have vested in him and them had he applied for it before committing the dishonorable act. In my view, the "punishment" simply "does not fit the crime" — or at least not to the extent that we should assume the Legislature intended to impose it without so expressly declaring. A theoretically accrued pension worth scores of thousands of dollars should not become forfeitable for the kind of subsequent offense which took place here and which was presumably ap-

propriately punished criminally by a $250 fine without probation.[1]

Until the Legislature declares otherwise, it is high time this Court revoked a rule partly based upon obsolete concepts of the nature of a pension which projects the potential of serious injustice to policemen, firemen and their families.

Justice SCHREIBER joins in this concurring opinion.

CLIFFORD, J., dissenting.

Every Achilles has his heel. Chief Makwinski's apparently was an irresistible desire to help the Knights of Columbus in their hour of need. In yielding to this desire he plainly violated the law by embarking upon a pattern of deliberate misconduct extending over almost a year. A jury convicted him of misconduct in office, on an indictment charging that appellant "unlawfully and willfully did fail, omit and neglect his public duty", as Carteret Chief of Police, of "refraining from using public employees for private work at public expense and thereby did willfully and corruptly violate and betray" the duties of his public office "to refrain from using public employees for the private gain of any person at public expense", and did willfully and corruptly violate and betray "the public trust and confidence reposed in him."

---

[1]Although there may be a difference in appropriate public policy as to treatment of pension rights in the private sector, the contrast between the *Plunkett* rule and the provisions of the Internal Revenue Code (26 *U. S. C. A.* § 411(a)(3)) and the Employee Retirement Income Security Act (ERISA) (29 *U. S. C. A.* § 1053(a)(3)) as to forfeitability of interests in pensions is notable. Benefits attributable to employee contributions are never forfeitable; those attributable to employer contributions *only* upon death of the participant, reemployment of the retiree, retroactive amendment of the plan or withdrawal of mandatory employee contributions. A particular concern of Congress in mandating nonforfeitability for any other reason was that otherwise pension rights might be cut off because of bad or disloyal conduct of the employee subsequent to vesting. *Legislative History*: P. L. 93–406, U. S. Code Cong. & Admin. News 1974, p. 4639, at 5052.

The Consolidated Police and Firemen's Pension Fund Commission, two of whose nine members are active policemen and two firemen (all four elected by their peers), twice denied Makwinski's application for service retirement on the ground that the statutory requirement of honorable service had not been met. See *N. J. S. A.* 43:16–1. At his request appellant was given an administrative hearing in the Division of Pensions. The hearing officer, after reviewing the evidence including the testimony of a dozen witnesses appearing for Chief Makwinski, found as a fact that he (a) had "authorized the payment of a salary from public funds to a police officer under his command who did not render service to his employer, the public;" (b) had "permitted and allowed a police officer to do private work on public time;" and hence (c) "was guilty of misconduct in office * * * sufficient to render his service dishonorable." The Commission reviewed the record and affirmed its earlier decision denying the application for service retirement with its accompanying pension.

The Appellate Division affirmed, in an opinion which pointed out that a pension is "an inducement to conscientious, efficient and honorable service;" that to bestow a pension "upon one whose record of public service is marred by a conviction for malfeasance in office would be to place a premium upon dishonesty and inefficiency [and] to burden the taxpayer with the necessity of providing for one who has betrayed the trust imposed upon him," citing *Walter v. Police & Fire Pension Commission of Trenton,* 120 *N. J. L.* 39 (Sup. Ct. 1938). The court below determined that Makwinski's conviction involved a crime of moral turpitude, inasmuch as "the result of his action was to defraud the borough by denying it the policeman's services while he was employed at public expense;" and it found the Commission's determination that petitioner's service was dishonorable due to his misconduct in office to be supported by the record and in accord with legislative policy.

In reversing the judgment of the Appellate Division the Court readily concedes that Makwinski was "undoubtedly" guilty of misconduct touching the administration of his office (a conclusion shared by everyone else who has reviewed appellant's actions — jury, hearing officer, pension commissioners (three times), and Appellate Division). In addition the majority correctly points out, *ante* at 90, that "[g]enerally, disenfranchisement of pension rights is found in cases where the criminal conduct touches the administration of the public employee's office or position, or where the conduct involved moral turpitude," citing *Gauli v. Trustees Police & Firemen's Retirement Sys.*, 143 *N. J. Super.* 480, 482 (App. Div. 1976). Nevertheless the Court concludes that because Makwinski entertained no venal motive, his criminal misconduct in office was not tantamount to dishonorable service so as to result in forfeiture of his pension rights.

In superimposing consideration of this additional factor — motive — on the determination of whether a public official guilty of a crime touching the administration of his office has served honorably, the Court lurches conspicuously out of line with the established pension law of this state, effectively reads honorable service out of the statute, and disregards those policy considerations counseling against departure from a strict standard of performance for those entrusted with public office. The public's current perception of public officials, both elected and appointed, is hardly such as to encourage our looking the other way just because appellant stands to suffer a financial loss if we do otherwise. Police dishonesty should, after all, be treated as somewhat more serious than "a foot-fault in Scarsdale," (to use the columnist Jimmy Breslin's comparison).

Without pausing to decide whether Chief Makwinski's illegal conduct involved moral turpitude (the authorities marshalled in *O'Halloran v. DeCarlo*, 156 *N. J. Super.* 249 (Law Div. 1978) support the Appellate Division's affirmative con-

clusion on that issue), I think it plain beyond serious discussion that his misconduct in office was such as to render his service dishonorable. To view it as anything less — as amounting to no more than "misguided actions," *ante* at 92 or an occasional "indiscretion," *ante* at 91 — is badly to misgauge its serious nature. The offense before us goes to the very root of appellant's public duty to uphold the law. The State's brief makes the point well:

Here is involved a public employee who over the years gained the trust and confidence of the public to be appointed a municipality's chief law enforcement officer and chief supervisor of men in an entire municipal department. At this high position of power, he betrayed the public trust imposed in him by flagrantly violating his sworn duty to enforce the laws. Moreover, he diverted a man under his control from his public duties to work for a private corporation during an extended period of time. This misconduct not only defrauded the public of the salary paid the patrolman for public services not rendered, but, more significantly, defrauded the public of the immeasurable value of vitally needed law enforcement protection.

It is all well and good to limit the holding of this case to its "unique facts", but today's determinations have a sometimes disquieting habit of surfacing tomorrow as established precedents. Indeed, one must wonder whether the Court's attempt to reach what it perceives to be an equitable decision will result in pension entitlement to a band of latter-day Robin Hoods.[1]

Judicial ingenuity is not without its limitations, and it will be taxed to the utmost if whatever guiding principle may be extracted from this case is to be squared with the body of case law preceding it. Moreover, reconciling today's

---

[1]Consider, for instance, the government accountant who embezzles public funds for payment over to a charity; the road foreman who orders his crew to pave the local church's parking lot; the government attorney who, during his work day, uses government facilities and personnel to furnish *pro bono* legal services to a charitable institution.

decision with sound public policy will become a formidable, if not impossible, task.

I would affirm.

SCHREIBER, J., and CONFORD, P. J. A. D., concurring in the result.

*For reversal and remandment*—Chief Justice HUGHES, Justices SULLIVAN, PASHMAN, SCHREIBER and HANDLER and Judge CONFORD—6.

*For affirmance*—Justice CLIFFORD—1.