VICTOR J. MASSE, APPELLANT, v. BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1980—Decided August 4, 1980.

Before Judges BISCHOFF, BOTTER and MORTON I. GREENBERG.

*Robert A. Coogan* argued the cause for appellant.

*Prudence H. Bisbee*, Deputy Attorney General, argued the cause for respondent (*John J. Degnan*, Attorney General, of New Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel). .

The opinion of the court was delivered by

BOTTER, J. A. D.

Based on his conviction for crimes of moral turpitude the Board of Trustees of the Public Employees' Retirement System (hereafter PERS) declared appellant's service as a public employee prior to January 31, 1977 "dishonorable" for the purpose of computing pension credit, thus disallowing the credit he had earned for service before that date. The PERS board considered it immaterial that the crimes in question, impairing the morals of a minor, were unrelated to appellant's public employment as assistant superintendent (foreman) of the Water and Sewer Department of the Borough of Highlands and that appellant was continued in that position after his conviction. The board's decision is in keeping with case law previously established by this court. Nevertheless, finding that we are not bound by prior decisions of our Supreme Court on this precise issue, we have reexamined the underlying principles and reach a different conclusion.

Appellant began working for the Borough of Highlands in 1947 and was enrolled in PERS as of January 1, 1955. As a veteran he received 6½ years of credit for employment with the borough prior to 1955. In March 1976 appellant was indicted for acts of debauching or impairing the morals of a child under 16 (*N.J.S.A.* 2A:96–3) and contributing to the delinquency of a child (*N.J.S.A.* 2A:96–4) on several dates in March and April 1975. Pursuant to a plea agreement, on January 31, 1977 appellant entered guilty pleas to two counts of impairing the morals of a minor. He was given a suspended sentence. Although he was permitted to continue working for the borough, the PERS board annulled his pension rights earned before January 31, 1977 on the ground that his prior service was rendered "dishonorable" by the commission of crimes of moral turpitude. The board ruled however, that his public service rendered thereafter would be deemed "honorable."[1] In effect, appellant's prior membership was to be terminated accompanied by a refund of his own pension contributions, and a new membership was to be commenced.

The board's determination followed its administrative practice of long standing. It was derived from the principle expressed in *Plunkett v. Hoboken Bd. of Pension Comm'rs*, 113 *N.J.L.* 230, 232 (Sup.Ct.1934), aff'd on opinion below, 114 *N.J.L.* 273 (E. &

---

[1]Before the hearing officer, the parties stipulated in part:

On February 17, 1977 the Petitioner and his employer filed an application for early retirement. The Petitioner's part of the application was not dated, not signed and not notarized. The employer's part was signed with the date of February 16, 1977.

By a letter dated July 7, 1977 Petitioner notified the Board of Trustees that he wished to withdraw his application for retirement.

The Board of Trustees at its December 14, 1977 meeting made a determination that any service rendered by Petitioner for the Borough of Highlands prior to January 31, 1977 was dishonorable. The Board further decided that any service rendered after February 1, 1977 would be considered honorable service. Petitioner was so notified by a letter dated December 21, 1977.

Petitioner does not question the right of the board to conduct the hearing and issue its determination in the absence of a pending request for retirement benefits, and we express no opinion on the issue.

A.1935), namely, that honorable service is the *sine qua non* for a public pension. Accordingly, the board holds that a public employee forfeits his pension rights by committing a crime of moral turpitude even if the crime is unrelated to his public employment. *Gauli v. Police and Firemen's Retirem. Sys. Bd. of Trustees,* 143 *N.J.Super.* 480, 482 (App.Div.1976). The general rule was stated by our Supreme Court in *Makwinski v. State,* 76 *N.J.* 87, 90 (1978), in the following terms: pension rights are forfeited (a) for criminal conduct touching the administration of the public employee's office or position, and (b) for criminal conduct involving moral turpitude though unrelated to the public employment. When a member of PERS is convicted of a crime and continues or is reemployed in public employment, PERS board's practice has been to determine whether the crime involves moral turpitude. If it does, all service performed prior to the date of conviction is deemed tainted and disqualified for pension purposes. However, as the decision below stated, employment after the conviction "is deemed honorable" and is credited towards a pension.

Our Supreme Court has not squarely decided the issue presented in this case. Although the general rule was acknowledged without comment by the Supreme Court in *Makwinski v. State, supra,* the statement in *Makwinski* was *dictum* to the extent that it applied to crimes unrelated to public employment. In *Makwinski* the police chief's conviction for misconduct in office constituted wrongdoing related to his public employment, and the rule requiring forfeiture of pension rights for a crime of moral turpitude unrelated to one's employment was not involved.

The rule in question was first formulated in *Ballurio v. Castellini,* 29 *N.J.Super.* 383 (App.Div.1954), and was accepted by this court in *Gauli, supra.* In *Ballurio,* a street department foreman was suspended from employment because he had been charged with committing an illegal abortion. Prior to the hearing of his removal from employment he filed an application for retirement, but it was not processed. After he was convicted his dismissal from employment was made final. Holding that

"honorable" service is "implicit" in every public pension statute, the court said:

A pension is a bounty springing from the appreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service. And its utility would be destroyed if a person who is properly subject to discharge because of guilt of a crime involving moral turpitude can be said to have an indefeasible claim to a pension simply because he has served the required length of time and reached the necessary age and happens to win a headlong race to file his application for retirement before the public authorities can try him on the charges pending against him arising from such crime. [At 389.]

The court then reasoned that Ballurio was deprived of the privilege of obtaining a pension from the time his employment was suspended until the criminal proceedings terminated and his dismissal became final. Since he was properly removed from office before his pension was granted, the court held he was not entitled to the pension. In *Gauli, supra,* this court cited *Ballurio* for the principle that the commission of a crime of moral turpitude unrelated to public employment forfeits one's pension rights, but the case was remanded to determine whether unlawful possession of a weapon constituted such a crime.

The cases which served as the apparent source of the rule and introduced the concept of moral turpitude as a disqualifying factor, *Plunkett v. Hoboken Bd. of Pension Comm'rs, supra,* 113 *N.J.L.* at 233 and *McFeely v. Hoboken Bd. of Pension Comm'rs,* 1 *N.J.* 212, 218 (1948), both involved crimes related to the pensioner's public employment. In *Plunkett* the crime was embezzlement of money from the Hoboken Firemen's Relief Association by a fire department employee, constituting "misconduct, in violation of departmental rules and regulations." 113 *N.J.L.* at 231. *McFeely* involved a chief of police who was indicted for nonenforcement of gambling laws and conspiracy to "oppress" and "persecute" other members of the police force. 1 *N.J.* at 217. *Plunkett* held that pension rights do not become "vested" merely by the passage of years of service. 113 *N.J.L.* at 233. The court reasoned that the rule was needed to prevent misconduct after an employee had attained the requisite minimum credits for a pension. The *McFeely* court held that there was an implied power to suspend action on a pension claim

pending the outcome of criminal proceedings which it found consistent with *R.S.* 2:160–9, now, *N.J.S.A.* 2A:135–9. This statute provides for forfeiture of an elective or appointive office or position upon conviction of a crime "touching the administration" of [one's] office or position, or which involves moral turpitude, . . . . ."

An employee may be subject to discharge for conduct unbecoming a public employee, such as in *Ballurio v. Castellini, supra,* even if the wrongful conduct does not touch upon the duties of the public office or position involved. See *N.J.S.A.* 2A:135–9. Confidence in government could be shaken if a public employee in a sensitive position is continued in office after being convicted of a crime of moral turpitude simply because the crime was unrelated to public employment. The question here is whether a crime of moral turpitude should work a forfeiture of pension rights acquired through years of faithful and honorable service. In *Ballurio* the court found that the employee's discharge from employment took effect before the pension had been granted. But *Mount v. Pub. Employees' Retirem. Sys. Trustees,* 133 *N.J.Super.* 72 (App.Div.1975), held that a pension that had been granted could be suspended upon the discovery of criminal activity related to and committed in the course of the pensioner's prior public employment. We agree that the issue should not turn on the timing of the pension application. However, in our view a public employee who has earned pension rights through years of faithful public service should receive those rights even if he has been derelict in his private life. Here punishment for the crime has been determined by standards of criminal justice. To require the forfeiture of pension rights in addition to the criminal sanction is a harsh and arbitrary penalty [2] where the offense was unrelated

---

[2] See *Makwinski v. State, supra,* 76 *N.J.* at 92, where the court noted that Makwinski's sentence was a $250 fine without probation, but revocation of pension rights could cost him the loss of $150,000. Judge Conford, concurring, in an opinion in which Justice Schreiber joined, stated that the punishment " 'does not fit the crime'—or at least not to the extent that we should

to public employment and, in that sense, did not constitute dishonorable service and a betrayal of public trust.

Here, appellant, born in 1925, had been employed by the Borough of Highlands since 1947 and had almost 30 years of pension credit when he entered guilty pleas in 1977 to two crimes of impairing the morals of a minor contrary to *N.J.S.A.* 2A:96–3. Appellant had been suspended temporarily for three weeks in 1975 after the charges were filed, but he was reinstated and has continued in employment.[3] The municipal administrator testified to appellant's good public service in the Water and Sewer Department, saying:

> Mr. Masse is a faithful servicer in the service of the Borough of Highlands, is concerned much. He performs very well in many cases under extreme conditions. With his responsibility, he must be able to respond with very little notice. He oversees a department that has had at one time as many as seven people and [the] fact that we have found no grounds in that time for any disciplinary measures, whether he be reprimanded or anything else, says a lot. I think from my observation Mr. Masse is an excellent employee.

He added that appellant would be continued in employment until he elects to retire.

The crimes for which appellant was indicted involved four young girls aged 10, 13, 15 and 16. The first two counts charged him with showing three of the children pornographic pictures on March 28, 1975. The next two counts charged him with touching the breasts of the 15-year-old girl and masturbating in her presence. The remaining counts, including the seventh count, charged him with forcing the 15 and 16-year-old girls to masturbate him and asking the 13-year-old girl to touch his genital organs (the ninth count). He entered guilty pleas to the seventh and ninth counts. He was given concurrent suspended one to three-year prison terms, placed on probation for two years on condition that he receive psychiatric counselling, and fined

---

assume that the Legislature intended to impose it without so expressly declaring." *Id.* at 97.

[3] Citing *N.J.S.A.* 2A:135–9, the Attorney General questions whether appellant was properly continued in his appointive position as distinguished from his new title of "foreman." We express no opinion on this subject since it is not before us.

$1,000. Despite this criminal episode the municipality has concluded that it is in the public interest to continue appellant in employment. The question is whether an additional penalty should be imposed for appellant's wrongdoing although the municipality has not considered it so dishonorable or embarrassing as to require his dismissal. Moreover, as appellant points out, he had already acquired the right to "early retirement" under *N.J.S.A.* 43:15A–41(b) after 25 years of service. There is absolutely nothing in the PERS law that provides for the cancellation of pension credits for years of service in these circumstances. While *N.J.S.A.* 43:1–2 provides for the suspension of pension payments during the period of incarceration for a crime of moral turpitude, as will be shown below, this statute suggests a contrary conclusion to that reached by the PERS board.

*N.J.S.A.* 43:1–2 provides that no "pension or subsidy" shall be paid by the State or any municipality or school district to any person "for the period during which he is confined in a penal institution as a result of conviction of a crime involving moral turpitude, . . . ." It provides for the forfeiture of pension payments during such period of incarceration, but it permits payments to be made in the discretion of a pension board to a needy mother, father, wife or minor child of such pensioner. While this statute was mentioned briefly in *Fromm v. Police and Firemen's Sys. Bd. of Directors,* 81 *N.J.Super.* 138, 145 (App.Div.1963), and *Ballurio v. Castellini, supra,* 29 *N.J.Super.* at 394, its implications have not been analyzed in any of the cases dealing with this subject. The legislative intent is to provide for the suspension and forfeiture of pension payments on conviction of a crime of moral turpitude during the period of confinement only. This is made clear by the language in *N.J.S.A.* 43:1–2 that specifies that "for the period during which he is confined to a penal institution" the pensioner "shall lose all right to *so much* pension or subsidy as he would receive or be entitled to receive had he not been so confined; . . . ." (Emphasis supplied.) Thus, a court-made rule calling for the forfeiture of pension rights in cases not specified by the Legisla-

ture is suspect at the least. It should not go beyond the bounds of necessity. We do not say that forfeiture of a pension for criminal conduct involving one's public employment is unreasonable. It may be found by implication in statutes expressly relating a pension to honorable service. Nor is it unreasonable to imply honorable service as a condition for pension credits. In our view, criminal conduct unrelated to public service does not render that service dishonorable. Thus, it should not be the basis for forfeiture of pension credits, although *N.J.S.A.* 43:1–2 would come into play if the pensioner is incarcerated.

The interplay of judicial and legislative action makes it difficult to analyze the rules in other states; however, some courts have applied the legislated right to retirement literally and have refused to read forfeiture provisions into the law on their own initiative, even when the employee has been convicted of a crime. *Daigle v. McLaughlin*, 193 *F.Supp.* 902 (D.D.C.1961); *Willens v. Commission on Judicial Qualifications*, 10 *Cal.*3d 451, 110 *Cal.Rptr.* 713, 561 *P.2d* 1 (Sup.Ct.1973); *State ex rel. Kirby v. Board of Comm'rs of Hartford*, 129 *Conn.* 419, 29 *A.2d* 452 (Sup.Ct.Err.1942); *Williams v. Smith*, 360 *So.2d* 417 (Fla.Sup.Ct. 1978). *See Spencer v. Bullock*, 216 *F.2d* 54 (D.C.Cir.1954); *City of Frederick v. Quinn*, 35 *Md.App.* 626, 632, 371 *A.2d* 724, 727 (Ct.Spec.App.1977).

■  We ought not go too far in imposing civil sanctions for immoral, criminal conduct that can be sufficiently punished in a criminal setting. Criminal conduct varies greatly in seriousness, and our sense of morality may not be a fair guide to determine which crimes require forfeiture of a pension and which do not. *Cf. Makwinski v. State, supra.* The rule applied by the PERS board, which has grown casually out of a few cases and little analysis, is inherently arbitrary and may often be unreasonable. It is inconsistent with the view that pension credits represent to some extent deferred wages for services rendered. *Watt v. Franklin Boro.*, 21 *N.J.* 274, 279 (1956); *Spina v. Consolidated Police and Firemen's Pension Fund Comm'n*, 41 *N.J.* 391, 401–402 (1964). See, also, *N.J.S.A.* 2A:152–2 (saved from repeal by the Code of Criminal Justice, *N.J.S.A.* 2C:98–3): "No conviction

or judgment for any offense against this state, shall make or work corruption of blood, disinhersion of heirs, loss of dower, or forfeiture of estate. . . ." (*Willens v. Commission on Judicial Qualifications, supra,* 10 *Cal.*3d at 458–459, 110 *Cal.Rptr.* at 717, 516 *P.*2d at 5, held that a similar provision barred the forfeiture of pension rights, absent express statutory authority.) Thus we conclude that an employee should not be deprived of pension credits earned for years of faithful service because of a transgression unrelated to his employment in the absence of an express statutory provision for such forfeiture.

Accordingly, we reverse and reinstate all of appellant's pension credits for his years of service.