DANIEL J. PROCACCINO, APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, BOARD OF TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT.

Argued April 7, 1981—Decided July 27, 1981.

*Ira C. Miller* argued the cause for appellant Daniel J. Procaccino (*Pellettieri, Rabstein & Altman,* attorneys).

*Bertram P. Goltz, Jr.,* Deputy Attorney General, argued the cause for Board of Trustees, Public Employees' Retirement

System (*James R. Zazzali*, Attorney General of New Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel; *Mr. Goltz* and *William P. Malloy*, on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

Plaintiff, Procaccino, began working with the New Jersey Department of Transportation in 1948. When he retired from his position as title examiner on April 1, 1978, he was 54 years old and had performed his job satisfactorily for more than 32 years.

Beginning in 1954 he was also employed during his off-hours as a constable for the Mercer County District Court. As a result of an investigation into his activities as a constable, he was suspended and later discharged from that job.

In January 1978 he was indicted for improperly appropriating funds entrusted to him while in county employ. The alleged misconduct occurred between September 29, 1975 and July 30, 1976.

In March 1979, plaintiff plead guilty to misconduct in office. On June 1, 1979, he was sentenced to an 18 month jail term, but the sentence was suspended subject to probation for one year and restitution of the funds taken. We were informed at oral argument that the restitution had been made and the probationary period served.

In conjunction with his retirement from the Department of Transportation, plaintiff sought his pension from the Public Employees Retirement System (PERS), effective April 1, 1978. The Board of Trustees discontinued processing his application because of the pending indictment. Following the plea of guilty, the Board held that the "conviction constitutes dishonorable service as a matter of law" and that therefore plaintiff was not eligible for a pension. Plaintiff appealed to the Appellate Division, which affirmed. The court noted that conviction of a

crime defeats the honorable service requirement if the offense involves (1) administration of the public employment or (2) moral turpitude even if not job-related. It affirmed the Board's determination that, though the conduct was unrelated to his employment in the Department of Transportation, the offense was one of moral turpitude. The Appellate Division acknowledged the "harsh result," commenting that "perhaps [a] more equitable result would be reached under ... several recent decisions of other jurisdictions ... which take issue with a forfeiture imposed when, as here, a public employee who is otherwise eligible to receive a service pension is disqualified because of his unlawful conduct." We granted plaintiff's petition for certification. 85 *N.J.* 471 (1981).

Plaintiff seeks a pension under *N.J.S.A.* 43:15A–41b, asserting he may retire early having established 25 years of "creditable service" before reaching age 60. The principles which we have adopted this day in *Masse v. State of N.J., Dep't of Treasury*, 87 *N.J.* 252 (1981), are equally applicable here. The alleged offense was unrelated to his employment by the State in the Department of Transportation; his job as a constable did not taint his work as a title examiner; he was not removed from his job in the Department of Transportation for misconduct or delinquency; and he had performed creditable service for over 25 years before the misconduct as a constable occurred.

Reversed and remanded to the Public Employees' Retirement System to process plaintiff's application for a pension.

CLIFFORD, J., dissenting.

Plaintiff worked for the New Jersey Department of Transportation (DOT) from 1945 to 1978. For twenty-four of those thirty-three years he also worked part-time as a constable in the Mercer County District Court. In 1977 he was discharged from the latter post and shortly thereafter was indicted for improperly appropriating funds entrusted to him while in county employ, more particularly in that he

did willfully, knowingly and unlawfully engage in misconduct in the said public office, that is, the said DANIEL J. PROCACCINO did breach and violate the aforesaid duties by collecting the sum of $4,261.17 pursuant to legal process in trust on behalf of the actual party or parties in interest but failing to either turn those monies over to the Mercer County District Court or to the actual party or parties in interest, contrary to the provisions of N.J.S. 2A:85–1, and against the peace of this State, the Government and dignity of the same.

Stripped of its artful legalese, that means he stole money with which he was entrusted while in the public employ.

Plaintiff pleaded guilty to the count of the indictment quoted above. The Board of Trustees of the Public Employees' Retirement System denied plaintiff a pension, holding him ineligible because of dishonorable service. The Appellate Division affirmed. This Court reverses because plaintiff's offense was unrelated to his DOT employment, he was not removed from his DOT job for any misconduct or delinquency, and he had performed creditable service for over twenty-five years before the misconduct as a constable occurred. I dissent from that holding because it departs sharply from well-established law in the area more properly left to the Legislature and in this case represents quirky policy.

I

The policy requiring forfeiture of pension rights on account of dishonorable service has been part of our law for almost half a century. This significant fact was pointed out, with obvious approval, by a majority of this Court in *Makwinski v. State*, 76 *N.J.* 87 (1978), decided only three terms ago. The Court there observed that our long-standing law has been that "even though a person serves honorably for the minimum number of years set forth in the [pension] statute no vested property right to a pension accrues", *id.* at 90; and that the "requirement of honorable service has been held to continue during the entire period of active service." *Id.* (citing *Plunkett v. Pension Comm'rs of Hobroken*, 113 *N.J.L.* 230 (Sup.Ct.1934), aff'd, 114 *N.J.L.* 273 (E.

& A. 1935); *Hozer v. State*, 95 *N.J.Super.* 196 (App.Div.), certif. den., 50 *N.J.* 285 (1967)).[1]

One concurring opinion in *Makwinski* emphasized the "paramount importance of public employees acting honestly in accordance with the public trust placed in them", 76 *N.J.* at 93, and declared full support for the rule that "dishonorable service requires total forfeiture of pension rights, even one which has 'vested' after 25 years of honorable service." *Id.*

Lest there be any doubt that *Makwinski* adhered to the last-declared principle, it should be noted that the Court, including some members of today's majority, rejected Judge Conford's specific invitation to overrule the line of cases that has "interpolated into the statute a provision for total forfeiture of any pension if, even after the specific period of honorable service, the employee remains in service instead of applying for retirement and *thereafter* commits a dishonorable act." 76 *N.J.* at 94–95 (Conford, P.J.A.D. t/a, concurring) (emphasis in original).

## II

The results in the long line of pension forfeiture cases adverted to in *Makwinski* have not turned on whether or not the dishonorable conduct was job-related. The test has been simply whether the offense "touches the administration of the public employee's office or position, or involves moral turpitude," even if not job-related. *Makwinski, supra*, 76 *N.J.* at 90; *Gauli v. Trustees Police and Firemen's Ret. Sys.*, 143 *N.J.Super.* 480, 482 (App.Div.1976). In our earliest pension forfeiture case, *Plunkett v. Pension Comm'rs of Hoboken, supra,* a fireman was disquali-

---

[1] Although *Makwinski* was concerned with *N.J.S.A.* 43:16–1, the police and firemen's pension statute, which by its terms requires that service be honorable before one is entitled to a pension, the Court recognizes, *ante* at 272, that the requirement of honorable service is implicit in all our pension statutes—a principle of almost thirty years' standing. See, *e.g., Mount v. Trustees of Pub. Empl. Retirement Sys.*, 133 *N.J.Super.* 72, 81 (App.Div.1975); *Ballurio v. Castellini*, 29 *N.J.Super.* 383, 389 (App.Div.1954).

fied for pension benefits because he embezzled funds from a private organization, the Hoboken Firemen's Relief Association, 113 *N.J.L.* at 231. Although such conduct was a violation of departmental rules and regulations, the ground of disenfranchisement was *not* that the embezzlement was job-connected but rather that it "involve[d] moral turpitude, and palpably justifie[d] the denial of a pension to one so offending." *Id.* at 233. In *Ballurio v. Castellini*, 29 *N.J.Super.* 383 (App.Div.1954), a foreman in a municipal street department was denied a public pension based on his participation in the crime of abortion—an offense involving moral turpitude and having no connection whatsoever with his job. *Id.* at 386. *Cf. Mount v. Trustees of Pub. Empl. Retirement Sys.*, 133 *N.J.Super.* 72, 81 (App.Div. 1975) (falsifying federal tax returns involved moral turpitude sufficient to render public service dishonorable for pension purposes, independently of separate job-related ground of extortion); *Gauli v. Trustees Police and Firemen's Ret. Sys., supra*, 143 *N.J.Super.* at 482–84 (administrative agency should determine whether moral turpitude was involved in non-job-connected offense of unlawful possession of weapon).

Relying on its reasoning in the companion case of *Masse v. Trustees, Public Employees' Retirement Sys.*, 87 *N.J.* 252 (1981), the Court now departs from this settled, consistently-reiterated law to lay down a new rule: when the criminal offense upon which pension disenfranchisement is based is unconnected with and unrelated to the employment that garnered the pension benefits the employee's public service will no longer be viewed as dishonorable. *Masse, supra,* 87 *N.J.* at 258–259. It seeks to justify this judicial innovation on two grounds, one based on legislative intent and the other on the Court's view of sound policy regarding public employees' pensions.

## III

The Court reasons that the employee in this and the companion case of *Masse, supra*, should not be disenfranchised because

the nexus between their misconduct and the public employment is "at best insubstantial," *Masse, supra,* 87 *N.J.* at 258, and "[t]he threat of forfeiture for unrelated misconduct does not impact upon the future performance of the public employment." *Id.* From this reasoning the majority concludes that "[i]t is extremely doubtful that the Legislature intended such a drastic penalty [as disenfranchisement]."

Not likely. What in fact the Court has done is overturn by judicial fiat that which has for decades been accepted by the Legislature as the operative interpretation of its statutes. Inasmuch as the Legislature has acquiesced in what the courts have consistently interpreted the pension statutes to mean by "honorable service," we should heed the general rule of statutory construction that the Legislature's acquiescence in a long standing judicial interpretation is indicative of legislative intent. *E.g., Lemke v. Bailey,* 41 *N.J.* 295, 301 (1963).

True, as this Court has but recently observed, "[l]egislative silence [is] a 'weak reed upon which to lean,' " *Alfone v. Sarno,* 87 *N.J.* 99, 109 (1981) (quoting 2A C.Sands, *Sutherland Statutory Construction* § 49.10, at 261 (4th ed. 1973)); but as *Alfone* makes clear, the maxim gains strength when there has been a "clear and unequivocal judicial interpretation" of the statute and "extensive amendment or reenactment" by the Legislature in the subject area. 87 *N.J.* at 109. Both requirements are amply satisfied in the situation presently before us: the case law on the subject is plentiful and consistent, and the Public Employees' Retirement System act has been addressed by the Legislature on numerous occasions, including a major revision in *L.* 1971, *c.* 213, eff. June 17, 1971. But the Legislature has never acted to alter or modify in any way the "honorable service" prerequisite and the forfeiture provisions long ago read into the statutes by the courts. That being so, the intent of the Legislature can best be divined from its acceptance of the well-settled decisional law interpreting "honorable service."

## IV

The second strand of the Court's analysis rests on its view of the nature of a public employee's pension. The argument rejects earlier notions of a public pension being a reward or sovereign gratuity and recognizes the pension as compensation for services rendered. *Masse, supra,* 87 *N.J.* at 259–260. Support for this position is said to be found in the legislative pension scheme, tax treatment of pensions, recent judicial opinions, and the negotiating process between public employees and employers. *Masse, supra,* 87 *N.J.* at 259–262.

The difficulty with this analysis is that if a pension is really nothing more than a form of deferred compensation, then the requirement of "honorable service" becomes meaningless. It is neutralized out of existence, irrespective of whether the employee's misconduct is job-related or otherwise. If a pension right is compensation, once vested it becomes indefeasible despite subsequent dishonorable conduct—a principle long since rejected in our case law, as *Makwinski* makes unmistakably clear. See 76 *N.J.* at 90.

## V

If the requirement of "honorable service" retains any validity, it is difficult to understand how either the letter or spirit of that concept will be advanced by application of the Court's new rule in this case. Whether the pension be looked upon as a reward bestowed by the public employer for honest and efficient service, *e.g., Walter v. Police & Fire Pension Comm'rs of Trenton,* 120 *N.J.L.* 39, 42 (Sup.Ct.1938), or as delayed compensation already earned by past service, *Makwinski, supra,* 76 *N.J.* at 96 (Conford, P.J.A.D. t/a, concurring), the law has been—and remains, although in tattered form after today—that the public employee must perform honorable service before becoming entitled to a pension.

In pleading guilty to misconduct in his part-time county employ, Procaccino explained to the court that he had been

using funds entrusted to him to pay his own personal and business debts. He was sentenced to eighteen months in the Mercer County Correction Center, suspended, put on probation for one year, and required to make restitution. Principles of justice and fairness are not one whit offended by the idea that stealing money coming into his hands by reason of public employment should disentitle *any* public employee from receiving *any* public pension, irrespective of the fact that the particular misconduct did not occur in the particular public employment that created the right to the public pension. The public is entitled to expect its public employees to be trustworthy in dealing with money coming into their hands by reason of the public employment, and to expect further that failure to perform according to that fundamental tenet of honest behavior will result in the public servant not receiving a pension that rests on "honorable service."

## VI

The policy arguments advanced by the Court in support of its holding are not without persuasive force, and their application to specific instances of misconduct may in fact avoid otherwise harsh results. Nevertheless, I remain largely unmoved by these arguments, as I was in *Makwinski, supra,* 78 *N.J.* at 98–102 (dissenting opinion), because of my belief that the established pension law of this state requires that pension entitlement be determined according to a strict standard of performance for those persons entrusted with public office.

Pension laws are peculiarly the prerogative of the Legislature. If drastic revisions are to be made in this area because of changing notions of the purpose to be served by public employee pensions, then those revisions should be wrought in another forum. It is one thing for the Court to disagree with the Legislature, to conclude that the body has acted unwisely, and then to seek to persuade by reasoned analysis. It is quite another thing to trespass boldly into the territory of legislative

dominion by rewriting the settled and accepted law. The Court has chosen the latter course.

I would adhere to the established law and hold that the pension applicant, having been found guilty of a crime of moral turpitude, is not entitled to any portion of the pension. Hence I vote to affirm.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, SCHREIBER, HANDLER and POLLOCK—6

*For affirmance*—Justice CLIFFORD—1.