218 N.J. Super. 274 (1987)
527 A.2d 883
T.J.M., PETITIONER-APPELLANT,
v.
THE BOARD OF TRUSTEES OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1987.
Decided May 14, 1987.
*275 Before Judges FURMAN, SHEBELL and STERN.
*276 Kenneth H. Ginsberg argued the cause for appellant (Catherine T. Hogan, on the brief).
Eileen C. Stokley, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney; Michael R. Clancy, Deputy Attorney General, of counsel; Eileen C. Stokley, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Petitioner-appellant, T.J.M., a Mendham Township police officer, who passed away in August 1986, had appealed the denial of his application for a disability retirement pension by the Board of Trustees of the Police and Firemen's Retirement System ("Board").
On October 18, 1984 a criminal complaint was filed in the Mine Hill Municipal Court charging appellant under N.J.S.A. 2C:14-2a with aggravated sexual assault upon his 17 year old daughter. The complaint alleged that on various days between 1981 and 1984, he performed sexual penetration.
On October 23, 1984 appellant was suspended without pay pending disposition of the criminal case against him. On December 6, 1984 he entered a guilty plea to aggravated sexual assault, N.J.S.A. 2C:14-2a(2)(a), pursuant to a plea bargain which provided for a maximum term of incarceration of seven years. Appellant was sentenced on April 19, 1985 to an indeterminate seven year term at Avenel.
On January 3, 1985 appellant filed an application for ordinary disability retirement with the Police and Firemen's Retirement System ("PFRS"). By letter dated May 22, 1985 he was informed that the Board had denied his request for retirement benefits. He appealed from the denial and the matter was referred to the Office of Administrative Law. The Administrative Law Judge ("ALJ") conducted an evidentiary hearing on January 2, 1986 and issued his Initial Decision on March 12, 1986 ordering that the May 1985 decision of PFRS be affirmed. *277 The Board accepted the recommendation and denied appellant's request for ordinary disability benefits on April 29, 1986.
Appellant worked as a police officer during a four year tour of duty in the U.S. Air Force in the late 1960s. He served in Vietnam and after leaving military service he was a patrolman in the Newark Police Department for three years until July 1972 when he became "mentally incapable of performing his required police duties."
On January 15, 1973 appellant began work as a patrolman with Mendham Township. He was employed continuously in that capacity until his suspension without pay on October 23, 1984. He was enrolled in the Public Employees' Retirement System on January 1, 1973 and was an inter-fund transfer to the Police and Firemen's Retirement System on January 1, 1975.
Appellant's history of psychological difficulties dates at least from 1972. Further, he was the victim of an incestuous relationship when a juvenile. The sexual assaults against his daughter took place in his home while he was not on duty.
In its Final Administrative Determination the Board adopted the findings of fact, conclusions of law and recommendations of the ALJ. The ALJ held that Masse v. Public Employees' Retirem. Sys., 87 N.J. 252 (1981) and Procaccino v. Public Employees' Retirem. Sys., 87 N.J. 265 (1981) did not control this case but rather the flexible balancing approach of Uricoli v. Police & Fire. Retirem. Sys., 91 N.J. 62 (1982) governed. He concluded that pension forfeiture was required as factors 7, 8 and 9 of the Uricoli test, 91 N.J. at 78, weighed so heavily in favor of forfeiture that these three factors "far outweigh[ed] the good contained in the other factors."
Masse involved an individual who had been employed as an Assistant Borough Superintendent of Water and Sewers for approximately 14 years until suspended because of his indictment for impairing the morals of a minor and contributing to the delinquency of a minor. Masse pled guilty to two counts of *278 the indictment and returned to work with the borough after three weeks. When he applied to the Public Employees' Retirement System ("PERS") for early retirement benefits, the Board denied him credit for service before the date of his guilty plea. The Board concluded that the requirement of "honorable service" is not met when a civil servant is convicted of a crime involving moral turpitude, even when the misconduct is unrelated to his public employment. 87 N.J. at 254. Our Supreme Court reversed, holding that there was no justification for the forfeiture of a civil servant's pension service credits when the servant's conviction of a crime involving moral turpitude was unrelated to his public employment. Id. at 261-261, 264.
In Procaccino, decided the same day as Masse, the employee worked full-time as a title examiner for the New Jersey Department of Transportation and part-time as a constable for the Mercer County District Court. He pled guilty to misconduct in office for misappropriating funds while working as a constable. Despite his conviction, the Supreme Court ruled that he was not barred from receiving a pension based upon his service with the State since his offense "was unrelated to his employment" in the Department of Transportation and because "his job as a constable did not taint his work as a title examiner...." 87 N.J. at 268.
The year following the Masse and Procaccino decisions the Supreme Court considered whether Police Chief Uricoli was eligible for pension benefits after being convicted of a single traffic ticket fixing incident. The misconduct involved in Uricoli, unlike Masse and Procaccino, was related to Uricoli's public duties for which pension credit was sought.
Uricoli cited Masse approvingly, 91 N.J. at 69, 71-73, 75, but nonetheless dictated
that in all cases, even where there is a relationship between the particular misconduct at issue and the performance of employment duties, a balancing *279 approach is required in order to determine whether forfeiture is justified under all of the circumstances. [Id. at 77 (emphasis ours)].
The Court continued:
The factors which must be considered and balanced in the application of such a flexible test should include such elements as (1) the employee's length of service; (2) the basis for retirement, i.e., age, service, disability, etc.; (3) the extent to which the employee's pension has vested; (4) the duties of the particular employment; (5) the employee's public employment history and record; (6) the employee's other public employment and service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the employee's public duties; (9) the quality of moral turpitude or the degree of guilt and culpability, including the employee's motives and reasons, personal gain, and the like; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the employee bearing upon the justness of forfeiture.
These factors are illustrative of those which may properly be taken into account in determining the reasonableness of pension forfeiture. They must be balanced and then weighed in terms of the goals to be achieved under the pension laws. The balance to be achieved takes its bearings from the major purposes underlying public pensions  to induce people to enter public employment and continue faithful and diligent employment and to furnish public employees with employment stability and financial security. [Id. at 77-78].
We hold that appellant's entitlement to pension benefits must be determined by applying the flexible balancing test of Uricoli. Uricoli explicitly states that its test applies to "all cases" involving forfeiture of pension benefits. Id. at 77. The Uricoli test must, however, be viewed in the background of Masse. Thus, only in the most compelling of circumstances should the Uricoli test compel a civil servant to forfeit his pension rights when he is convicted of a crime involving moral turpitude which is unrelated to his public employment. Factor 8 of the Uricoli test, therefore, should not weigh in favor of forfeiture if the civil servant's misconduct is unrelated to his public employment unless a balancing of all factors compels the conclusion that nothing less than total forfeiture will satisfy the objectives to be achieved under the Pension Laws. Id. at 78.
Both the ALJ and the Board made errors of law in applying the Uricoli test and they also made factual determinations which are unsupported by sufficient credible evidence present *280 in the record. See Gerba v. Public Employees' Retirem. Sys., 83 N.J. 174, 189 (1980).
The ALJ concluded that Uricoli factors 7, 8 and 9 weighed very strongly in favor of forfeiture and that factor 10 neither helped nor harmed appellant. He stated: "In my judgment, it matters not that the majority of the 11 factors in Uricoli favor petitioner. They do. However, this is not a sporting event."
While we do not take issue with the ALJ's assessment of factor 7, pertaining to the nature of the offense, we must note that it is strongly mitigated by appellant's psychological background and his being victimized as a youth. On factor 8, the ALJ concluded that appellant's misconduct was related to his public employment based primarily on two items: (1) a police officer always has the rights and responsibilities of a law enforcement officer, whether he is on or off duty; and (2) police officers should be held to a higher standard than other public employees because of their duties and the public's perception of them. We find this conclusion to be too attenuated and not in keeping with the reasoning of both Masse and Procaccino which recognized pension benefits as related to past creditable service, not to be forfeited by criminal conduct unrelated to the service solely because of the individual's status as a public employee. Masse, 87 N.J. at 263; Procaccino, 87 N.J. at 268.
The Board's attorney at oral argument before us urged for the first time that appellant had violated N.J.S.A. 9:6-8.10 (duty to report child abuse) and/or N.J.S.A. 2C:30-2 (official misconduct) because as a police officer he failed to report his own crime. However, appellant was never charged with such violations. We cannot speculate on his possible defenses, both factual and constitutional. Appellant's crime was uniquely personal and completely unrelated to his office. No weapon or other instrument or indication of office was involved in the crime's commission. It cannot be said that appellant's misconduct was any more related to his public employment than that of either Masse or Procaccino.
*281 In assessing Uricoli factor 9, the degree of moral turpitude or culpability, the ALJ concluded, "[t]he degree of petitioner's guilt and culpability was of the highest order." This conclusion is not supported by sufficient credible evidence. Although the crime committed was one of moral turpitude, it cannot be said that appellant's culpability was of the "highest order." He did not receive any pecuniary gain or personal gain in the ordinary sense. The experts at Avenel determined that the crime was the result of psychological sickness, rather than ordinary criminal culpability. The ALJ's assessment of this factor falls wide of the mark and is clearly erroneous.
Further, we find no basis for the ALJ's conclusion that factor 10, the availability and adequacy of other penal sanctions, does not weigh in appellant's favor. Appellant could have received a 20 year sentence with 10 years of parole ineligibility. The Legislature had determined this to be an adequate maximum penal sanction. The prosecution offered a plea bargain which was accepted by the sentencing judge as an adequate and appropriate sanction in this case. Criminal sentencing decisions and their adequacy are within the sound judgment of the judiciary. See Masse, 87 N.J. at 263. It must therefore be concluded that factor 10 is to be weighed as favoring appellant.
On the facts presented any pension entitlement of appellant may not be totally forfeited under a proper application of the Uricoli test. Appellant's offense was recognized and dealt with by the criminal courts as resulting from an illness which required treatment and as occurring under circumstances which required mitigation of punishment in the interests of justice. The ALJ's recommendations and the Board's rejection of appellant's application manifest a position inconsistent with that of the Law Division when it considered the same individual and the same offense. This inconsistency is unwarranted and has produced an unjust and harsh result. The family, which the ALJ pointed out has been the victim of and destroyed by *282 appellant's crime, has been subjected to further punishment in circumstances where our Supreme Court and Legislature envisioned support and benefit.
At the time of the hearing before the ALJ on January 2, 1986, appellant and his wife had already been divorced, their eldest child was no longer a minor, and appellant had apparently already been incarcerated. At the administrative hearing, the ALJ examined only whether appellant's family was entitled to any pension benefits as the facts existed on the day of the hearing and concluded they were not. Appellant claims that the ALJ erred and that the entitlements should have been calculated at the time appellant applied for disability benefits or, alternately, at the time of his incarceration when his wife and eldest daughter as well as his two minor children would have been eligible for benefits under N.J.S.A. 43:1-2.
We reject the Board's argument that we should not review this issue on the grounds that appellant did not raise the point below. By applying for disability benefits on January 3, 1985 and by virtue of N.J.S.A. 43:16A-6 which states that a civil servant who falls under that section is eligible for benefits one month after making written application, it is clear that the issue of the effective date of appellant's pension benefits was before the Board and the ALJ.
N.J.S.A. 43:16A-6 indicates that an individual is entitled to be "retired" one month after filing an application, and once retired, is entitled to begin receiving benefits. PFRS has cited no cases in its brief to support its position that appellant may not receive back payments if it is determined that he has been entitled to benefits all along and independent research has uncovered no such cases. Given the policy in this state of construing pension statutes liberally in favor of the persons they are intended to benefit, Masse, 87 N.J. at 259, we conclude that appellant's pension entitlement, and his family's entitlement, *283 should be calculated beginning one month after he made application for disability benefits.
The determination that appellant's pension was not necessary for the maintenance of appellant's children is untenable. Appellant's former wife testified at the hearing as to her income, expenses and liabilities. It is clear that the pension was necessary for the maintenance of the family under N.J.S.A. 43:1-2. While no cases have interpreted the phrase "necessary for their maintenance" in N.J.S.A. 43:1-2, we are convinced that this phrase may not be interpreted to mean that the pension will only be paid if the pensioner's family would be destitute without such payments. Payments are necessary in this case not only to fulfill appellant's obligation under law to provide necessary and adequate support for his children but also to ease the burdens placed upon the children's mother by the loss of appellant's support. These financial realities are not overcome merely because the mother is able to provide some support to offset the loss.
We have not been made aware of any evidence to indicate the appellant was not disabled from serving as a police officer because of his deep-seated psychological problems. Nonetheless, we must remand to the Board so that it may consider whether any portion of appellant's pension should be withheld after balancing the Uricoli factors in accordance with the views expressed in this opinion. A partial forfeiture may be appropriate but in no event should it be greater than admeasurement as of the time of the wrongful conduct. See Uricoli, 91 N.J. at 79; Makwinski v. State, 76 N.J. 87, 93 (1978).
The Board must also specifically order the various entitlements of the beneficiaries and the applicable dates in view of appellant's changed marital status, his children's ages and dependency and his subsequent death.
Reversed and remanded.