JOHN J. BUONO, PETITIONER-APPELLANT, v. BOARD OF TRUSTEES OF TEACHERS' PENSION AND ANNUITY FUND, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 24, 1983—Decided February 15, 1983.

Before Judges MILMED, MORTON I. GREENBERG and FURMAN.

*Richard A. Friedman* argued the cause for appellant (*Ruhlman, Butrym & Friedman,* attorneys).

*Gale P. Simon,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General, attorney; *Deborah T. Poritz,* Deputy Attorney General, of counsel; *William P. Malloy,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MORTON I. GREENBERG, J.A.D.

Petitioner John J. Buono appeals from a determination of respondent Board of Trustees of the Teachers' Pension and Annuity Fund (hereinafter "Trustees") denying petitioner's request that respondent reconsider its prior determination of March 9, 1978 that petitioner's public service had been "dishonorable." By reason of the decision of March 9, 1978 he had become ineligible for an ordinary disability retirement benefit from the Teachers' Pension and Annuity Fund (hereinafter "Fund").

The procedural history and factual background of this matter are not complicated. In April 1976 petitioner, formerly a social worker employed by three boards of education and thus a member of the Fund, filed an application for ordinary disability retirement benefits. An investigation of his application by the Trustees revealed that he had been indicted on January 5, 1976 in Monmouth County for various sexual offenses, including solicitation for prostitution, conspiracy to solicit for prostitution, carnal abuse, impairing the morals of a minor and contributing to the delinquency of a minor. In accordance with procedures then followed, the Trustees suspended processing of petitioner's application until disposition of the criminal charges. Petitioner and his attorney were so advised by letter dated September 20, 1976. They made no objection to the procedure being followed. On November 17, 1977 at a jury trial petitioner was found guilty of all the aforesaid offenses and on February 17, 1978 he was sentenced to concurrent sentences of not less than two nor more than three years on the counts of solicitation for prostitution, conspiracy to solicit for prostitution and impairing the morals of a minor. The remaining two counts were merged into the count for impairing the morals of a minor.

As a result of these convictions petitioner's service was deemed dishonorable by the Trustees. Thus, petitioner was not entitled to ordinary disability benefits from the Fund. On March 13, 1978 petitioner and his attorney were given written notice of this determination and were advised that petitioner was entitled to a return of his pension contributions. The notice further indicated that if they disagreed with the determination they could request a formal hearing. On April 5, 1978 petitioner filed an application for withdrawal of his contributions. He also stated that he was not appealing the decision of the Trustees. Petitioner was subsequently refunded $3,833.23 in contributions and $594.34 interest.

On August 4, 1980 this court decided *Masse v. Public Employees' Retirement System*, 175 *N.J.Super.* 325 (App.Div.1980). We

there held that a public employee's conviction for a crime of moral turpitude unrelated to his employment would not be cause to deny him his pension. On July 27, 1981 the Supreme Court, on a further appeal in *Masse*, 87 *N.J.* 252 (1981), and in *Procaccino v. Public Employees' Retirement System*, 87 *N.J.* 265 (1981), held that a public employee's misconduct involving moral turpitude, unrelated to his public employment, does not result in automatic forfeiture of his public pension rights.[1] No decision was made as to the applicability of the new rule to cases in which the pension had already been denied.

As a consequence of the Supreme Court decision in *Masse*, petitioner on August 26, 1981 sent a written request to the Trustees asking them to reinstate his application for a disability benefit. He indicated that he had withdrawn his contributions from the Fund because of the duress of his personal circumstances emanating from his incarceration. He further stated that his conviction was for offenses unrelated to his employment,[2] a contention the Trustees did not address. The Trustees referred his request to the Attorney General for advice. On September 15, 1981 petitioner's attorney submitted a written opinion to the New Jersey Education Association in which he concluded that petitioner was entitled to his pension. On October 29, 1981 a copy of this opinion was forwarded to the Trustees.

By letter of April 19, 1982 the Trustees wrote petitioner that on April 1, 1982 they had concluded that petitioner's case was closed because he was no longer a member of the Fund.

---

[1] *See Uricoli v. Police and Firemen's Retirement System*, 91 *N.J.* 62 (1982), for the current rule with respect to forfeiture of pension rights where the employee is convicted of a crime related to his employment duties.

[2] However, the January 24, 1978 report of the Adult Diagnostic and Treatment Center in the matter reveals a clear work-related origin of the sex offenses charged against petitioner.

On April 22, 1982 the Attorney General gave written advice to the Trustees in response to their request. He advised them that the *Masse* and *Proccacino* cases,

> ... which stand for the proposition that crimes of moral turpitude which are unrelated to a member's public employment do not constitute dishonorable service requiring the forfeiture of the member's pension benefits should be applied to all cases where an application for benefits was pending as of August 4, 1980 or where further administrative or judicial *process* recourse [was] also pending. All cases where the administrative and/or judicial process had been concluded prior to that date and where the public employee had withdrawn his accumulated pension contributions are to be considered concluded and any requests to reopen them should be denied.

On April 28, 1982 petitioner appealed to this court from the decision of the Trustees.

■■■■  We are satisfied that the Trustees properly refused to reopen petitioner's case. In *Spiewak v. Rutherford Bd. of Ed.*, 90 *N.J.* 63 (1982), the Supreme Court indicated that a significant change in the law by a court will not be applied retrospectively. Rather, it will operate prospectively only. *Id.* at 82. The reason for such a refusal to apply a new legal rule retrospectively is that it is unfair to parties who have acted in reliance on the old rule. Further a prospective application of the law will avoid confusion in the administration of statutes and the execution of the law.

There is no question but that the decision of the Trustees in finding that petitioner's service was dishonorable was consistent with holdings of this court (*see Gauli v. Police and Firemen's Retirement System,* 143 *N.J.Super.* 480, 482 (App.Div.1976); *Ballurio v. Castellini,* 29 *N.J.Super.* 383 (App.Div.1954)) and with dicta from both the Supreme Court and this court. *See Makwinski v. State,* 76 *N.J.* 87, 90 (1978); *Masse v. Public Employees' Retirement System, supra,* 175 *N.J.Super.* at 326. Indeed, when the Trustees in 1976 suspended processing petitioner's application to await the outcome of the criminal charges against him, petitioner, though represented by counsel, did not object to this procedure. Further, his attorney in his September 15, 1981

opinion letter to the New Jersey Education Association stated: "In *Masse* the court overruled prior Appellate Division and Trial Court holdings and dicta indicating that conviction for nonemployment related crimes of 'moral turpitude' disqualified the employee from receiving a State pension." Since *Masse* represents a clear and significant change in the law, it would not, even if the offenses were not work-related, be applied retrospectively to petitioner's case.

We further point out that more than the issue of retroactively is involved in this case. In 1978 the Trustees made a formal determination that petitioner's service had been dishonorable and thus he was not entitled to an ordinary disability benefit. We do not doubt that the Trustees had the power to reopen petitioner's case. *Duvin v. State,* 76 *N.J.* 203, 207 (1978). But petitioner expressly waived his right to appeal and acquiesced in the determination of the Trustees. A mere change in the decisional law is not sufficient basis for the reopening of the prior determination. Rather the person seeking to reopen the decision must demonstrate extreme hardship and a clear equity in his favor. *See In re Wehrhane Estate,* 149 *N.J.Super.* 41, 53–54 (Ch.Div.1977). While it cannot be gainsaid that the denial of a disability pension demonstrates a substantial hardship, we see no clear equity in petitioner's favor. His application for a pension was rejected because of his gross misconduct. He has only himself to blame for his predicament. We further note that if the Legislature itself had adopted a statute incorporating the principles of *Masse* into the various public employee pension laws, the change would, absent a clear expression to the contrary by the Legislature, have been applied prospectively only. *See Skulski v. Nolan,* 68 *N.J.* 179, 201–203 (1975). Thus, a closed-out case would not be reopened because of the new statute. We see no reason to reach a different result simply because the change was made by judicial ruling.

The decision of April 1, 1982 is affirmed.