**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0636-23

ROBERT THURING,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued March 18, 2025 – Decided March 25, 2025

Before Judges Firko and Bishop-Thompson.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx1062.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, PC, attorneys; Samuel M. Gaylord, on the brief).

Payal Y. Ved, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Payal Y. Ved, on the brief).

PER CURIAM

Petitioner Robert Thuring, a judge of compensation, appeals from a September 21, 2023 final administrative determination by respondent Board of Trustees (Board) of the Public Employees' Retirement System (PERS) denying his request for a refund of a lump sum purchase of the PERS service credit. We affirm.

I.

On June 28, 2014, Thuring enrolled in the workers' compensation part of the PERS. On March 18, 2022, he submitted an application to purchase former PERS membership service credit for the period of July 1, 1988, to December 31, 2000. On March 22, 2022, the Department of the Treasury, Division of Pensions and Benefits (Division) advised Thuring that he was eligible to purchase 150 months of former time based on his former employment as a Spotswood Borough municipal prosecutor. Thuring submitted a purchase authorization form authorizing the purchase of eighty-four months of service for a lump sum payment of $72,312.56. The purchase authorization form states "[l]ump-sum and partial payments cannot be refunded for any reason."

On May 9, 2022, Thuring submitted an application for service retirement benefits with an effective date of August 1, 2022. Thuring claims the application

was based on his diagnosis of non-Hodgkin's Lymphoma. On June 3, 2022, the Division acknowledged receipt of Thuring's check for $72,312.56 for the purchase of eighty-four months of former membership. On June 13, 2022, Thuring cancelled his service retirement application as a result of being medically cleared. The Division confirmed this cancellation.

On July 19, 2022, Thuring requested a refund of the $72,312.56 for the purchase of eighty-four months of former membership because he had cancelled his pension application, and his service credit had not yet been posted to his account. In response, on July 27, 2022, the Division advised that pursuant to N.J.A.C. 17:1-4.1(a), it could not refund Thuring's purchase because the regulation does not allow refunds of lump sum payments. Thuring wrote a letter to the Board's secretary explaining that he had cancelled his retirement application well before the August 1, 2022 effective date and prior to his application being approved.

Thuring appealed from the Division's determination to the Board. Thuring requested that the Board consider "equitable principles" given that his retirement application was cancelled before it became effective, and therefore, there would be no harm to the pension system. On May 17, 2023, the Board held a meeting and considered Thuring's request.

3

On June 6, 2023, the Board denied Thuring's request to refund the monies he paid toward the purchase of PERS service credit from his former membership. The Board found it did not have good cause to waive the requirements of N.J.A.C. 17:1-4.1(a). The Board noted Thuring's decision to purchase his former PERS service was based on "health challenges" he faced at the time. The Board determined that Thuring was sixty-six years of age with five or more consecutive years of workers' compensation judge service but his PERS membership account "lacked [fifteen] or more years in the aggregate of public service."

After making the purchase, the Board acknowledged that Thuring's health condition had "improved," and he intended to remain a judge of compensation until the age of seventy, at which point he will have "[ten] or more years" of workers' compensation judge service and "thereby no longer making the purchase necessary for retirement purposes."

On July 17, 2023, Thuring appealed from the Board's decision, contending the Board failed to consider that his retirement application was cancelled before it was approved. Thuring also argued that if his refund request was denied, the result would be a "windfall" to the pension system and the Board failed to consider equitable principles pertinent to his situation. On August 16, 2023, the

4

Board met and considered Thuring's appeal. The Board found there were no genuine issues of material fact and denied Thuring's request for an administrative hearing.

In its final administrative determination, the Board concluded that once the purchase of prior service credit is authorized, N.J.A.C. 17:1-4.1(a) "prohibits the return of the monies paid toward[] the purchase, and allows only for the cancellation of prospective payments," and the purchase is "non-refundable." The Board reasoned that cancellation of Thuring's planned August 1, 2022 retirement "has no bearing on N.J.A.C. 17:1-4.1(a), which unambiguously precludes the refund of purchase monies regardless of whether a member has a retirement application on file."

The Board noted that "the [eighty-four] months of former PERS membership service was credited to [Thuring's] current PERS membership account," and therefore, if he wished to retire before age seventy, Thuring "will be assured of eligibility for a retirement benefit due to having [fifteen] or more years in the aggregate of public service as a result of the purchase." Accordingly, the Board did not find good cause to waive the requirements of N.J.A.C. 17:1-4.1(a), and denied Thuring's request for a refund. This appeal followed.

5

II.

On appeal, Thuring reprises his argument that the Board erred in failing to apply general equitable principles and liberally construe the pension statute. Thuring contends the Board's denial of his request for reimbursement of purchased pension credit time warrants reversal.

We begin by acknowledging judicial review of an agency's final determination is limited. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs. of Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27).

This standard "is generally understood to involve inquiry into whether the decision conforms with relevant law, whether there is substantial credible evidence in the record as a whole to support the agency's decision, and whether in applying the relevant law to the facts, the agency clearly erred in reaching its conclusion." In re State & Sch. Emps.' Health Benefits Comm'ns'

Implementation of Yucht, 233 N.J. 267, 280 (2018) (citing In re Carter, 191 N.J. 474, 482-83 (2007)).

"[A]n enhanced deferential standard" applies to agency decisions related to the enforcement of a statutory scheme. East Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022) (citing Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301-02 (2015)). This deference specifically applies to the agencies administering public pensions because of the "experience and specialized knowledge" required in "administering and regulating a legislative enactment within its field of expertise." Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 55-56 (App. Div. 2019) (quoting Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015)).

We affirm the Board's decision because it is supported by the substantial credible evidence in the record. R. 2:11-3(e)(1)(D). We add the following comments.

The law applicable to this case is derived from the statutes governing PERS and regulations governing purchase of prior pension service credit. Judges of compensation, like Thuring, are allowed to purchase prior pension service credit. See N.J.S.A. 43:15A-152. N.J.A.C. 17:1-4.1 addresses

purchases, cancellation, and other issues. Relevant here, subsection (a) of the regulation provides:

> A member who authorizes a purchase of service credit may cancel that purchase at any time on a prospective basis only. No refunds will be made of any lump sum payments, partial payments or installment payments. The member will receive a pro rata credit for the service purchased to the date installment payments cease. Any subsequent requests to purchase the remaining service credit shall be based on the laws and rules in effect on the date that the subsequent request is received.
>
> [N.J.A.C. 17:1-4.1(a) (emphasis added).]

Application of this regulatory scheme to the uncontested facts plainly supports the Board's decision. At the time Thuring submitted his purchase authorization form, he was on notice that the lump sum payment was non-refundable. Moreover, Thuring elected to make the lump sum payment instead of installment payments, which he could have canceled in the event of a changed circumstance. N.J.A.C. 17:1-4.1(a). However, any installment payments would not have been refundable. Ibid.

The Board's decision was a statutorily mandated outcome because N.J.A.C. 17:1-4.1(a) unequivocally states, "No refunds will be made of any lump sum payments." The Board's decision conformed with the law and was

supported by the evidence in the record. It was not arbitrary, capricious, or unreasonable.

## III.

Thuring next argues that on June 8, 2022, he was notified that he no longer had B cell symptoms and cancelled his retirement application, which was confirmed by email approximately forty-eight days before his anticipated August 1, 2022 retirement date. Because he resumed his judicial responsibilities, Thuring asserts equitable considerations should apply to allow reimbursement of his purchase of service time.

"Equitable estoppel is rarely invoked against a governmental entity . . . ." In re Johnson, 215 N.J. 366, 378 (2013) (internal quotations and citations omitted). "Nonetheless, equitable considerations are relevant to assessing governmental conduct . . . and may be invoked to prevent manifest injustice . . . ." Id. at 379 (first citing Skulski v. Nolan, 68 N.J. 179, 198 (1975); and then citing Vogt v. Borough of Belmar, 14 N.J. 195, 205 (1954)). Under an estoppel theory, a litigant must prove that the opposing party "engaged in conduct, either intentionally or under circumstances that induced reliance . . . ." Knorr v. Smeal, 178 N.J. 169, 178 (2003). This involves "a knowing and intentional

misrepresentation" by the party against whom estoppel would apply.  O'Malley v. Dep't of Energy, 109 N.J. 309, 317 (1987).

Thuring avers the Board failed to consider the "totality of the circumstances" and based its decision solely on the Administrative Code section and not "on the equity of the situation."  Thuring argues the specific facts of his case warrant "an equitable solution" to reimburse his service pension credit.  Here, the Board considered Thuring's "personal statements," written submissions, and documentation.  The Board did not find good cause to waive the requirements of N.J.A.C. 17:1-4.1(a).

We have held that a member seeking relief on equitable principles "must demonstrate extreme hardship and a clear equity in his [or her] favor."  Buono v. Bd. of Trs. Tchrs.' Pension & Annuity Fund, 188 N.J. Super. 488, 493 (App. Div. 1983).  In Buono, the plaintiff appealed from a Board's decision that his public service had been dishonorable.  Id. at 489.  He had become ineligible for an ordinary disability retirement benefit because of this dishonorable determination.  Ibid.  Buono had been found guilty of various sexual offenses, which was what led the Board to declaring his service as dishonorable.  Id. at 490.  On April 5, 1978, after Buono was given written notice of this

determination, he filed an application for withdrawal of his pension contributions. Ibid.

On August 4, 1980, we decided Masse v. Bd. of Trs., Pub. Emps.' Ret. Sys., 175 N.J. Super. 325 (App. Div. 1980) and held that "a public employee's conviction for a crime of moral turpitude unrelated to his employment would not be cause to deny him his pension." Buono, 188 N.J. Super at 491. Further, our Supreme Court affirmed that decision in Masse v. Bd. of Trs., Pub. Emps.' Ret. Sys., 87 N.J. 252 (1981).

Buono appealed based on our Supreme Court's decision in Masse. Buono, 188 N.J. Super at 491. After Buono appealed the decision, the Board declined to reopen Buono's case, as the change in law in Masse could not apply retroactively. Buono, 188 N.J. Super. at 492. Further, we affirmed the Board's decision and added that Buono had expressly waived his right to appeal and acquiesced in the determination of the Board. Id. at 493. We noted a mere change in the decisional law is not sufficient basis for the reopening of the prior determination. Ibid. Rather, the person seeking to reopen the decision must demonstrate extreme hardship and a clear equity in his or her favor. Ibid.

Similar to Buono, we conclude Thuring has failed to demonstrate extreme hardship and a clear equity in his favor warranting implementation of the Board's

11

inherent powers.   While the Board recognized Thuring's situation was "sympathetic," it did not rise to the level of "good cause" to waive the requirements set forth in N.J.A.C. 17:1-4.1(a).   The record supports that determination.

In Kyer v. City of E. Orange, 315 N.J. Super. 524 (App. Div. 1998), cited by Thuring, the plaintiff, Kyer, filed a wrongful termination lawsuit against the city for summarily dismissing her after seven years of exemplary employment. Id. at 525-26.  Under the unique facts of Kyer, which are not present here, we held that the city "badly used" Kyer, whose seven-year provisional status as a full-time municipal court mediator was due to the city's failure to forward her new hiring forms to the Civil Service Commission.  Id. at 528-29, 534.  Kyer operated under the mistaken belief that her position was permanent.  Id. at 527-28.  Following disagreements with her new supervisor, Kyer was dismissed on only two days' notice.  Id. 529-30.  We declined to hold equitable estoppel applied and remanded for another resolution.  Id. at 532-33.

There is no such failure or neglect in the matter under review.  Unlike Kyer, Thuring's application was not mishandled and did not result in an erroneous outcome.

In Sellers v. Bd. of Trs. of Police & Firemen's Ret. Sys., 399 N.J. Super. 51 (App. Div. 2008), a municipal fire department hired Sellers, who was over the age of thirty-five, as a firefighter. Id. at 53. Both Sellers and the town believed his age would be reduced because of his prior police and military service, bringing him under age thirty-five. Id. at 54. We concluded that, under the applicable statutory provisions, Sellers was entitled to some age reduction, but not enough to bring him under thirty-five. Ibid.

We also noted that Sellers's and the Town's belief was based on a mistaken reading of the statute, and that the Board itself had initially approved Sellers's enrollment, also believing "he met the age criteria." Id. at 54, 61-62. Only after further review did the Board determine that applying the deductions did not bring Sellers under age thirty-five. Id. at 62. The Board therefore denied Sellers's enrollment in Police and Firemen's Retirement System, after he had been working as a firefighter for over a year. Id. at 52-53.

We remanded to the Board to determine "whether the facts warrant application of equitable principles here." Id. at 63. In our decision, we carefully defined the "relevant public and private interests" in that case that would inform the Board's analysis. Id. at 62. However, we did not compel the Board to conclude that Sellers was entitled to equitable relief. Id. at 62-63. Moreover,

we did not hold that the Board is required to undertake this balancing analysis in every case where a municipality hires a police officer or firefighter whose age exceeds the statutory maximum. In fact, we stressed that the Board's equitable power is to be used "rarely and sparingly." Id. at 62. Here, in contrast to Sellers, there is no evidence that the agency made any material mistakes, misrepresentations, or had been neglectful in any way. Moreover, we reject Thuring's argument that his case presents a "unique situation" akin to Sellers.

Thuring has not sustained his burden. Thuring decided to purchase service credit, his circumstances changed healthwise for the better, and he no longer wanted to go through with the purchase. These circumstances do not contemplate the "extreme hardship" or "clear equity in his favor" scenarios espoused in Buono.

In Minsavage for Minsavage v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, our Supreme Court found it appropriate to allow the reopening of a retirement selection "where good cause, reasonable grounds, and reasonable diligence are shown." 240 N.J. 103, 107 (2019). The Minsavage Court addressed whether a widow could modify the retirement application of her recently deceased husband, even though his application was never approved because he selected a retirement option for which he was ultimately ineligible.

Id. at 105. David Minsavage died of cancer after he accumulated twenty-four years and nine months of teaching service—just short of the twenty-five years required for an early retirement. Ibid. Because he did not qualify for his retirement selection, the Board determined his wife was only entitled to reimbursement of his pension contributions and a group life insurance benefit. Id. at 106. The Supreme Court noted while the husband did not live long enough to qualify for early retirement, his family would have been entitled to greater benefits had he selected and qualified.

The Supreme Court reversed the Board's decision and stated:

> Here, [the wife] claims that [the husband] was mistaken when he selected the "early retirement" option for which he was ultimately ineligible and that he was incapacitated from amending his selection thereafter. Because of this alleged mistake and incapacity, the Board would have the Minsavages receive only a nominal benefit from the Pension Fund to which [the husband] contributed for 297 months.

> [Id. at 109.]

The Supreme Court stated that the wife should be given an opportunity to present evidence and prove at a hearing that she exercised reasonable diligence and sought "to modify [her husband's] retirement selection for good cause upon reasonable grounds." Id. at 110. In contrast to Minsavage, there was no error

15

by Thuring in submitting his application, and he failed to show "good cause upon reasonable grounds" for which the Board's decision could be modified.

The record reflects Thuring's inability to satisfy the "good cause, reasonable grounds, and reasonable diligence" justifying reversal under Minsavage. The Board's power to refund Thuring's monies is specifically limited by the regulatory restrictions. The Board was sympathetic to Thuring's situation but was correct in its analysis. For these reasons, the Board's denial of an equitable remedy was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

16