**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5520-17T2

SEAN LINK,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, STATE
POLICE RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

          Submitted August 13, 2019 – Decided  September 5, 2019

          Before Judges Sumners and Moynihan.

          On appeal from the Board of Trustees of the State Police Retirement System, SPRS No. 8-5697.

          Limsky Mitolo, attorney for appellant (Marcia J. Mitolo, of counsel and on the briefs).

          Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Robert Seymour Garrison, Jr., Deputy Attorney General, on the brief.)

PER CURIAM

Appellant Sean Link appeals from a July 24, 2018 final decision of the Board of Trustees (the Board) of the State Police Retirement System (SPRS) that rejected the Administrative Law Judge's (ALJ) recommendation for partial forfeiture of his pension credit and reaffirmed its initial decision that his pension credit was totally forfeited due to two incidents of misconduct that occurred in 2008 and 2009. The Board also found that Link did not leave his employment due to a disabling condition, but rather because of the disciplinary charges filed against him, thereby making him ineligible for accidental disability retirement benefits. We affirm.

I

The record before the Board revealed that Link was employed as a New Jersey State Trooper for approximately ten years and eleven months beginning on February 9, 2005, until he resigned pursuant to a Negotiated Voluntary Plea Agreement General Disciplinary Matter on April 18, 2016.

Link was charged with, and pled guilty to, five New Jersey State Police disciplinary charges for incidents occurring on April 7, 2008 and January 18, 2009. In the first incident, Link, while on patrol, followed a vehicle for approximately ten miles and used his New Jersey State Police Mobile Data

Computer (MDC) to conduct a "Full Disclosure Inquiry" to obtain the female driver's personal information without initiating a proper motor vehicle stop.

About nine months later, Link, again on duty, requested and obtained the phone number of a woman, who was awaiting processing for a driving while intoxicated (DWI) charge, based on his representation that he could help her get the charge dismissed. For several months he inappropriately used his position as a Trooper to procure a romantic relationship with the woman by suggesting, among other things: she contact a judge "to pull some strings"; that proper procedures were not followed during the stop; and he could tell the arresting Trooper that she was a childhood friend and to "lay off" her case. At one point, he even appeared at her workplace unannounced and called her several times from a blocked number. When questioned about his conduct in August 2012, Link provided false and misleading statements and incorrectly claimed that he had submitted a Special Report about the woman's allegations against him.

Prior to his resignation, Link applied for accidental disability retirement benefits on December 30, 2014, in anticipation of retiring on May 1, 2015, based upon injuries he sustained from an on-duty motor vehicle accident on October 16, 2012.

3

On May 24, 2016, the Board considered Link's application for accidental disability retirement benefits.[1] However, the receipt of the benefits was conditioned on rendering honorable service. See N.J.S.A. 43:1-3(a). In evaluating whether his misconduct warranted forfeiture of benefits, the Board balanced the eleven factors set forth in N.J.S.A. 43:1-3(c):

> (1) the member's length of service;
>
> (2) the basis for retirement;
>
> (3) the extent to which the member's pension has vested;
>
> (4) the duties of the particular member;
>
> (5) the member's public employment history and record covered under the retirement system;
>
> (6) any other public employment or service;
>
> (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated;
>
> (8) the relationship between the misconduct and the member's public duties;
>
> (9) the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations;

---

[1] Link's accidental disability benefits application was delayed due to multiple amendments.

A-5520-17T2

(10) the availability and adequacy of other penal sanctions; and

(11) other personal circumstances relating to the member which bear upon the justness of forfeiture.

[Uricoli v. Bd. of Trs., 91 N.J. 62, 77-78 (1982).]

The Board determined that Link was not eligible for accidental disability retirement benefits because "his egregious misconduct . . . continued over numerous years[]" and "demonstrated a high degree of moral turpitude" showing "a pattern of violation of the public trust." As a result, it voted for a total forfeiture of his SPRS service credits, "leav[ing] him with no service credit with which to base an application for a disability retirement." Further, the Board found that Link did not leave employment due to disability, but rather termination. Link was allowed a "refund of his accumulated pension contributions [he made] during active service." He appealed the Board's decision and the case was transferred to the Office of Administrative Law for a hearing.

The ALJ, after balancing the Uricoli factors, found that while Link's misconduct began on April 7, 2008, there was no allegation of improper conduct prior to that time on which to base total forfeiture, stating that total forfeiture of pension benefits is reserved for "the most egregious cases." Relying on T.J.M.

v. Bd. of Trs., Police and Fireman's Ret. Sys., 218 N.J. Super. 274, 279 (App. Div. 1987), he determined that total forfeiture would result in an excessive forfeiture and recommended a partial forfeiture from the date of the first offense, April 7, 2008, to the date of Link's resignation, making him partially eligible for disability retirement benefits.

In its final agency decision, the Board rejected the ALJ's recommendation that partial forfeiture would be appropriate in this case. It rejected the ALJ's reliance on T.J.M., because unlike the police officer in that case, Link's misconduct was directly related to his employment as a State Trooper, and the ALJ provided no analysis to support his conclusion that the partial forfeiture should begin from April 7, 2008 – the date of the first misconduct incident. The Board found that adopting such a position would result in an excessive pension, as the first, second, third, and fifth Uricoli factors weighed strongly against Link. Therefore, it reaffirmed its initial decision to totally forfeit Link's service credit and hold him ineligible for accidental disability retirement benefits.

II

On appeal, Link argues the Board erred in reaffirming the total forfeiture of his SPRS service credits, maintaining that his misconduct was neither pervasive nor chronic, and his service credits should have been only partially

forfeited because he committed no misconduct before April 7, 2008, and served honorably in the time between the first and second incidents. Further, he argues the Board misinterpreted the ALJ's reliance on T.J.M., because the ALJ relied on that case to determine whether any allegations of misconduct arose prior to the incident and not whether the misconduct took place while on duty or off duty. See 218 N.J. Super. at 276. He also maintains that he left employment due to a permanent disability.

We begin with the principles that guide our decision. Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). A "strong presumption of reasonableness attaches" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). The burden is upon the appellant to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002); see also Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (stating "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant.").

Moreover, "an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue . . . .'" In

re Carter, 191 N.J. 474, 483 (2007); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). With these considerations in mind, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua–West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008); see also Bueno v. Bd. of Trs., 422 N.J. Super. 227, 233-34 (App. Div. 2011).

We have considered Link's arguments in light of the record and applicable legal principles and conclude there is ample credible evidence in the record to support the Board's evaluation of the Uricoli factors and its decision that a total forfeiture of his public service credit was warranted under the circumstances. See J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017). As such, we affirm substantially for the reasons set forth in the Board's final agency decision, which is supported by credible evidence in the record. R. 2:11-3(e)(1)(D). We add only the following comments.

The receipt of a public pension is "expressly conditioned upon the rendering of honorable service by a public officer or employee." N.J.S.A. 43:1-3(a). The Board may "order the forfeiture of all or part of . . . [a] pension . . .

for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable . . . ." N.J.S.A. 43:1-3(b). In evaluating a member's misconduct to determine whether it breaches the condition requiring that the member's service be "honorable" and whether total or partial forfeiture of the member's earned service credit is appropriate, the Board must consider and balance the eleven factors in N.J.S.A. 43:1-3(c). However, under N.J.S.A. 41:1-3(b), the misconduct must only "occur[] during the member's public service" to trigger forfeiture, and need not "involve[] or touch[] upon" the employee's public office. See Corvelli v. Bd. of Trs., Police and Fireman's Ret. Sys., 130 N.J. 539 (1992) (emphasis omitted) (holding that pension benefits may be forfeited under a discretionary analysis for "a crime involving moral turpitude which is unrelated to . . . public office").

The date Link's misconduct first occurred was the starting point of the Board's analysis of how much service credit should be forfeited. Pursuant to N.J.S.A. 43:1-3(d),

> [w]henever [the Board] determines, pursuant to this section, that a partial forfeiture of earned service credit or earned pension or retirement benefits is warranted, it shall order that benefits be calculated as if the accrual of pension rights terminated as of the date the misconduct first occurred <u>or, if termination as of that date would in light of the nature and extent of the misconduct result in an excessive pension or retirement</u>

> benefit or in an excessive forfeiture, a date reasonably
> calculated to impose a forfeiture that reflects the nature
> and extent of the misconduct and the years of honorable
> service.
>
> [(Emphasis added).]

While it is true that we held in T.J.M. that a flexible balancing test should be used in applying the Uricoli factors, it does not support Link's arguments. See 218 N.J. Super. at 276. Rather, in T.J.M., we reversed the Board's denial of a disability retirement pension to a police officer who had been convicted of off-duty aggravated sexual assault upon his daughter because although the officer's behavior was unforgivable, we held that the Board erred in imposing a total forfeiture of benefits without giving sufficient attention to numerous mitigating factors, including the officer's documented history of psychological disturbances. Id. at 277, 283.

This was not the case here, as the Board considered all of the Uricoli factors, including his three years of service, but determined that factors one, two, three, and five – which all consider the length of service, type of pension sought, and employment history – weigh strongly in favor of total forfeiture, which is supported by substantial credible evidence in the record. The Board reasonably determined that the nature and extent of Link's culpable conduct

would result in an excessive retirement benefit, and total forfeiture was warranted.

Moreover, it is evident that the Board's decision to totally forfeit Link's service credit was based on two incidents, both of which constituted deplorable conduct and a clear breach of public service. See N.J.S.A. 43:1-3(b). First, he followed a woman, in a marked State Trooper vehicle while on duty, and conducted an unauthorized "Full Disclosure Inquiry" to obtain her personal information. Then, only a year later, became personally involved in another woman's DWI litigation, while on duty, in an attempt to coerce her into a romantic relationship, as well as making unwanted phone calls to her on a blocked number and showing up at her workplace uninvited. Taken together, both incidents contravene Link's assertion that his misconduct encompassed a single isolated incident, and only amounted to "flirtatious" conduct not related to his position as a State Trooper. Further, the fact that Link did not personally benefit from either incident is irrelevant, as the true casualty of his misconduct was betrayal of the public's trust.

The record, therefore, supports the Board's determination that, under the circumstances of both incidents, Link's service was dishonorable and related to his duties as a State Trooper. See Masse v. Bd. of Trs., Pub. Emps.' Ret. Sys.,

11

87 N.J. 252, 263 (1981).  As such, Link has not demonstrated that the Board's action was arbitrary, unreasonable, or capricious.  McGowan, 347 N.J. Super. at 563.

We also briefly note that even if Link was eligible for partial service credit, he would not be entitled to accidental disability benefits because he left his employment as part of a voluntary plea agreement related to his misconduct charges.  It is well-established that in order to obtain disability benefits, N.J.S.A. 53:5A-10 requires the member to leave employment as the direct result of a traumatic injury.  See In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 411 (App. Div. 2018); Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 42 n.1, 42-43 (2008) (stating that the standard for accidental disability benefits is the same for the SPRS, Police and Firemen's Retirement System, and Public Employee's Retirement System).

To the extent that we have not addressed certain arguments by Link, we conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5520-17T2