**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4653-18T2

MICHAEL ELIAS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

Argued November 12, 2020 – Decided January 27, 2021

Before Judges Alvarez and Mitterhoff.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-108858.

Timothy J. Prol argued the cause for appellant (Alterman & Associates, LLC, attorneys; Stuart J. Alterman and Timothy J. Prol, on the briefs).

Thomas R. Hower argued the cause for respondent (Robert Seymore Garrison, Jr, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Porter R. Strickler, Deputy Attorney General, on the brief).

PER CURIAM

Michael Elias appeals from a May 14, 2019 final agency decision rendered by the Board of Trustees, Police and Firemen's Retirement System of New Jersey (PFRSNJ), imposing a total forfeiture of his five years, eight months of service credit at the Bergen County Sheriff's Department (BCSD). The total forfeiture made Elias ineligible for ordinary disability retirement benefits. We now vacate and remand to PFRSNJ.

We direct the agency to add to its analysis Elias's military service-based post-traumatic stress disorder (PTSD) and drug problems. This reconsideration must include a full discussion of the second Uricoli factor, given that less than a week before he filed for ordinary disability, Elias was found unfit for duty due to his mental health status by BCSD's own clinical psychologist. See Uricoli v. Bd. of Trs., Police & Firemen's Ret. Sys., 91 N.J. 62, 77-78 (1982); N.J.S.A. 43:1-3(c)(2). PFRSNJ also indicated, contrary to the record, that Elias had no other public employment and service, the Uricoli sixth factor. See Uricoli, 91 N.J. at 78; N.J.S.A. 43:1-3(c)(6). The agency should have weighed in the balance petitioner's prior honorable service in the Marine Corps, including significant combat experience. Ibid. The Board did not consider that the nature of the offenses, Uricoli factor seven, may have been "strongly mitigated by

2

appellant's psychological background."  T.J.M. v. Bd. of Trs. of Police & Firemen's Ret. Sys., 218 N.J. Super. 274, 280 (App. Div. 1987); see Uricoli, 91 N.J. at 78; N.J.S.A. 43:1-3(c)(7).  Nor does the record appear to support the PFRSNJ finding regarding the ninth Uricoli factor.  See Uricoli, 91 N.J. at 78; N.J.S.A. 43:1-3(c)(9).  Elias's misconduct did not result in personal gain, nor did it involve moral turpitude.  Ibid.  Additionally, PFRSNJ found the eleventh factor weighed in favor of forfeiture—which is not supported by the record.  See Uricoli, 91 N.J. at 78; N.J.S.A. 43:1-3(c)(11).  That factor requires consideration of the petitioner's "personal circumstances . . . as they bear upon the justness of the forfeiture."  Ibid.

Elias served in the United States Marine Corps from August 2003 to November 2007.  He spent seven months in active duty in Iraq, where he was injured at least twice.  At the time of his discharge, Elias received a partial disability pension for hearing loss and a knee injury.  He married a woman he met while stationed in Japan.  The couple divorced, and despite the award of joint legal custody, Elias's wife returned to her native country with the parties' children.  Elias has not seen them for years, and despite his efforts, has not been able to compel her return.

3

When Elias underwent a fitness for duty evaluation in July 2015, after having been found sleeping in his car in the parking lot when he should have been reporting for duty at the jail, he told the psychologist he had nightmares and flashbacks from his time in Iraq. While in Iraq, Elias was shot twice and was a passenger in a truck exploded by a roadside bomb. He claimed sixteen "kills." Elias was diagnosed as suffering from "active psychopathology and elevated risk for significant substance dependence . . . [and] a high probability for [PTSD]." The report also stated he was "unfit for duty for an indefinite, and likely, extended period of time."

Before the incident that triggered the evaluation, Elias accumulated an extensive disciplinary history within a very short period of time. Between October 29, 2014, and December 13, 2014, Elias failed to conduct post checks and inspections, documented post checks that were not completed, failed to engage in the distribution of razors to the inmates at the jail, was observed using his cell phone at a supervision post while a nurse dispensed medication to inmates, and showed his personal cell phone to an inmate classified as "highest security" during the inmate's scheduled hour out. As a result of these documented infractions, occurring over eleven days in less than two months, a preliminary notice of disciplinary action was issued against him, a settlement

4

agreement was reached, and he was suspended for 120 working days without pay. When Elias fell asleep in his car on July 13, 2015, he had completed his suspension. One month after the fitness for duty examination, he resigned from the BCSD.

On July 27, 2015, petitioner filed an ordinary disability retirement benefits application, citing the fitness evaluation and his PTSD diagnoses as conditions making him unable to continue to work. As of October 2015, a Veteran's Administration doctor increased petitioner's disability rating to 100%.

After the July 12, 2016 PFRSNJ denial of the petition based on total forfeiture of his service and salary, citing to "the egregious nature of [his] misconduct[,]" the matter was transferred to the Office of Administrative Law as a contested case. See N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13. The Administrative Law judge (ALJ) disagreed.

Applying the Uricoli factors, as codified in N.J.S.A. 49:1-3, the ALJ concluded that Elias should not forfeit any benefits, and should be permitted to apply for an ordinary disability pension. He found as a fact that defendant had honorably served in the United States Marine Corps, that there was "not a scintilla of evidence that any of petitioner's actions" resulted in personal gain, or constituted acts of moral turpitude. The ALJ reasoned that, by a

preponderance of the credible evidence, Elias's disciplinary infractions "were caused by PTSD." For a petitioner with no prior disciplinary history, the forfeiture of all service time was unwarranted, and not in accord with Uricoli, which directs the forfeiture of pension benefits "is reserved for the most egregious cases."

Elias raises three points on appeal:

> POINT I. THE BOARD ERRED AS A MATTER OF LAW BY ORDERING THE TOTAL FORFEITURE OF APPELLANT'S SERVICE CREDIT BECAUSE SAME IS AN EXCESSIVE SANCTION NOT SUPPORTED BY THE TOTALITY OF THE EVIDENCE.
>
> POINT II. AS A MATTER OF LAW THE BOARD INCORRECTLY APPLIED THE URICOLI FACTORS AS CODIFIED IN N.J.S.A. 43:1-3 AND THEREFORE THE TOTAL FORFEITURE OF APPELLANT'S CREDIT SHOULD BE REVERSED.
>
> POINT III. THE BOARD'S DECISION EVIS[C]ERATING APPELLANT'S PENSION CREDIT WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE AND WAS NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD, THEREFORE THE BOARD'S DECISION MUST BE REVERSED.

We are mindful of the highly deferential standard of review of administrative decisions. "Ordinarily, an appellate court will reverse the decision of an administrative agency only if it is arbitrary, capricious, or

6

unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980). "The precise issue is whether the findings of the agency could have been reached on substantial credible evidence in the record, considering the proofs as a whole." In re Hess, 422 N.J. Super. 27, 34 (App. Div. 2011). In this case, PFRSNJ's discussion omitted portions of the record.

The incomplete application of the Uricoli and statutory factors requires a remand for the Board to take into account Elias's full history. Without considering his prior honorable military duty, and the fact his PTSD and its aftermath likely caused his disciplinary infractions, the Board was able to characterize Elias's conduct over the course of one and one-half months as egregious. We do not mean by this remand to minimize the gravity of his disciplinary infractions—they plainly could have jeopardized the safety of both inmates and co-workers at the facility.

Uricoli factors, however, "must be balanced and then weighed in terms of the goals to be achieved under the pension laws . . . to induce people to enter public employment and continue faithful and diligent employment and to furnish public employees with employment stability and financial security." Uricoli, 91 N.J. at 78; N.J.S.A. 43:1-3(c)(12). "It is virtually axiomatic that statutory

7

pension provisions are to be liberally construed in favor of public employees." Widdis, 238 N.J. Super. at 78. Thus, we remand for the Board to take a second look at Elias's history and status, viewed through the prism of the Uricoli factors, before deciding the issue of forfeiture.

Vacated and remanded for reconsideration in accord with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4653-18T2