**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3054-23

CARLIA M. BRADY,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF THE
JUDICIAL RETIREMENT
SYSTEM,

      Respondent-Respondent.

_____

Argued October 1, 2025 – Decided November 12, 2025

Before Judges Berdote Byrne and Jablonski.

On appeal from the Board of Trustees of the Judicial Retirement System, Department of the Treasury, JRS M/S No. xx971.

Arnold C. Lakind argued the cause for appellant (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Arnold C. Lakind, of counsel and on the briefs).

Yi Zhu, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General,

attorney; Donna Arons, Assistant Attorney General, of counsel; Yi Zhu, on the brief).

PER CURIAM

Petitioner Carlia M. Brady, a former Superior Court judge, appeals from a final agency decision of the Board of Trustees of the Judicial Retirement System (JRS), which ordered Petitioner to forfeit her prospective disability pension benefits because of dishonorable service. Petitioner first argues the State House Commission (the Board) lacks jurisdiction to order pension forfeiture pursuant to N.J.S.A. 43:1-3(c) after a judge has already been approved for disability retirement by the Governor and the Supreme Court of New Jersey, as Petitioner was here. See N.J.S.A. 43:6A-12. Second, even if the Board has jurisdiction, Petitioner argues the eleven-factor balancing test set forth in N.J.S.A. 43:1-3(c) does not apply to her because her misconduct was unrelated to her employment, which, she contends, is a threshold requirement for application of the test. Finally, Petitioner argues the Board's application of the balancing test was arbitrary and capricious. Having reviewed the facts before us in light of all applicable legal principles, we affirm the Board's determination.

I.

The history of this case, which both we and our Supreme Court have previously detailed in State v. Brady, 452 N.J. Super. 143 (App. Div. 2017), and

2

In re Brady, 243 N.J. 395 (2020) respectively, is well known to the parties. We focus on the aspects particularly relevant to this appeal. Petitioner was appointed to the Superior Court in April 2013. She served in the Civil Division for approximately two months until her suspension on June 12, 2013, when she was accused of harboring her then-boyfriend, who was wanted for armed robbery. She was indicted by a grand jury on three counts: second-degree official misconduct, N.J.S.A. 2C:30-2(b), and two counts of third-degree hindering, N.J.S.A. 2C:29-3(a)(1) to (2). In March 2016, a trial court dismissed the misconduct charge but did not dismiss the hindering charges. Both parties appealed from those orders; we affirmed and remanded for further proceedings in September 2017. See Brady, 452 N.J. Super. at 174. Additionally, in February 2018, we reversed the trial court's order compelling Petitioner's boyfriend to testify against her, and the State subsequently concluded "it lacked sufficient evidence to prove [Petitioner]'s guilt beyond a reasonable doubt" without that testimony. On March 2, 2018, the trial court dismissed the indictment with prejudice upon the State's motion.

On March 6, 2018, Petitioner was reinstated to the Superior Court bench. However, on May 4, the Advisory Committee on Judicial Conduct (ACJC) filed a complaint against Petitioner. The ACJC held hearings over seven days in

2019, and recommended Petitioner be removed from judicial service for violations of Canon 1, Rule 1.1; Canon 2, Rules 2.1 and 2.3(a); and Canon 5, Rule 5.1(a) of the Code of Jud. Conduct. The Supreme Court conducted a de novo review and, applying the requisite clear and convincing evidence standard, agreed with the ACJC's conclusion, but elected to impose a three-month suspension instead of the sanction of removal. In re Brady, 243 N.J. at 423.

Petitioner had initially been suspended without pay on June 12, 2013. She was reinstated by the Supreme Court in March 2018 after her criminal charges were dismissed. In total, she served two months between her appointment in April 2013 and her suspension in June 2013, and eighteen months between March 2018 and September 2019. In September 2019, Petitioner stopped serving and began receiving temporary disability benefits until her judicial term expired in April 2020. She was not nominated for reappointment following the expiration of her initial seven-year term.

On February 18, 2020, Petitioner sent a letter to the Chief Justice of the Supreme Court applying for a permanent disability pension pursuant to N.J.S.A. 43:6A-12, which requires a judge's permanent disability to be certified by the Supreme Court and approved by the Governor. See also N.J.A.C. 17:10-5.10. She alleged permanent disability as a result of post-traumatic stress disorder,

bipolar II, major depression, and anxiety, caused by the unsuccessful criminal prosecution and the stress of the removal proceedings. After referring Petitioner to three physicians for evaluation as required by statute, the Governor approved the report of permanent disability on October 27, 2021, and authorized Petitioner "to pursue all necessary steps for her disability retirement." On November 18, 2021, Petitioner submitted a disability retirement application to the Division of Pensions and Benefits (the Division). She began receiving disability retirement benefits on December 1, 2021.

Petitioner then requested a retroactive retirement date of May 2020, which was administratively denied by the Division. Petitioner appealed that decision to the State House Commission, which acts as the Board of Trustees of the Judicial Retirement System. N.J.S.A. 43:6A-29; N.J.A.C. 17:10-1.

In reviewing the request for a retroactive retirement date, the State House Commission "determined that misconduct during [Petitioner's] tenure had not been reviewed by the Board in light of the honorable service provisions of N.J.S.A. 43:1-3 when the Board initially approved her retirement." Therefore, it informed Petitioner it "would review her judicial service" pursuant to N.J.S.A. 43:1-3, in addition to considering her appeal of the denial of a retroactive retirement date.

A-3054-23

On March 30, 2023, the Board conducted an honorable service review by weighing the factors codified at N.J.S.A. 43:1-3(c) and concluded Petitioner's pension should be forfeited as of April 1, 2023. The Board declined to reclaim the $189,000 in pension benefits already received by Petitioner between January 2022 and April 2023. Given its decision to order the forfeiture of her benefits, the Board concluded the retroactive retirement date issue was moot. Petitioner appealed that decision, and the Board denied the appeal. On April 26, 2024, having determined no material facts were in dispute, the Board memorialized its decision in a Final Administrative Determination. This appeal followed.

II.

Our review of an administrative agency's determination is limited. In re Carter, 191 N.J. 474, 482 (2007); McKnight v. Bd. of Rev., Dep't of Lab., 476 N.J. Super. 154, 162 (App. Div. 2023). We will sustain a board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Our review is guided by three inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial, credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency "clearly erred in

6

reaching" its conclusion.  Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).  We are not bound by an agency's statutory interpretation or other legal determinations, Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

A.    The Jurisdiction of the Board of the Judicial Retirement System to Conduct Honorable Service Reviews of Superior Court Judges.

The Judicial Retirement System Act (JRSA), N.J.S.A. 43:6A-12, outlines the procedure a judge of the Superior Court must follow to retire with a disability pension:

> Whenever the Supreme Court shall certify to the Governor, any member who shall have served as a judge of the several courts, may be retired for disability if the member has become physically or otherwise incapacitated for full and efficient service to the State in his judicial capacity.  The Governor shall thereupon refer the disability claim to three physicians of skill and repute in their profession and residents of this State who shall examine the member and report to the Governor as to his physical or other disability and whether in all reasonable probability, if they find the disability existent, it will continue permanently and does and will continue to prevent the member from giving full and efficient service in the performance of his judicial duties.  If the report confirms the existence of the disability, and if the Governor approves the report, the member shall be retired not less than 1 month next following the date of filing of an application with the retirement system, and he shall receive a

retirement allowance which shall consist of an annuity which is the actuarial equivalent of his accumulated deductions together with regular interest, and a pension which, when added to the member's annuity, will provide a retirement allowance during the remainder of his life in an amount equal to three-fourths of his final salary.

[N.J.S.A. 43:6A-12.]

Petitioner, for the first time on appeal, argues judges whom the Governor has approved for disability retirement pursuant to N.J.S.A. 43:6A-12 are exempt from honorable service review pursuant to N.J.S.A. 43:1-3. Because her disability had already been confirmed by the Governor, she argues the decision was "final" and the Board has no role in the assessment of whether she had served honorably.

Generally, we "will decline to consider questions or issues not properly presented to the trial court." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). However, because Petitioner challenges the jurisdiction of the Board, we elect to relax that general rule. See Hamilton, Johnston, & Co. v. Johnston, 256 N.J. Super. 657, 662 (App. Div. 1992) ("The question of jurisdiction is usually recognized as an exception to the general rule that an appellate court will decline to consider issues not properly presented to the trial court when there was an opportunity to do so.").

A-3054-23

The New Jersey Constitution provides: "Provisions for the pensioning of the Justices of the Supreme Court and the Judges of the Superior Court shall be made by law." N.J. Const., Art. VI, § 6, ¶ 3. In accordance with this mandate, JRSA was enacted in 1973. L. 1973, c. 140 (codified at N.J.S.A. 43:6A-1 to -47).

The review process for a judge's initial disability determination is distinct from the process for honorable service review outlined in N.J.S.A. 43:1-3, which states, "[t]he receipt of a public pension or retirement benefit is hereby expressly conditioned upon the rendering of honorable service by a public officer or employee." N.J.S.A. 43:1-3(a). To that end, N.J.S.A. 43:1-3(d) empowers the respective pension boards to determine whether a member's service was dishonorable, subjecting the member to full or partial forfeiture of their pension.

Petitioner argues the Governor's approval of her disability application exempts her from the process of honorable service review. This argument fails because of the plain language of N.J.S.A. 43:1-3(b), which provides:

> The board of trustees of <u>any State or locally-administered pension fund or retirement system created under the laws of this State</u> is authorized to order the forfeiture of all or part of the earned service credit or pension or retirement benefit of any member of the fund or system for misconduct occurring during the member's public service which renders the member's service or part thereof dishonorable . . . .

[N.J.S.A. 43:1-3(b) (emphasis added).]

"The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." Garden State Check Cashing Serv., Inc. v. Dep't of Banking & Ins., 237 N.J. 482, 489 (2019) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "If a statute's plain language is clear, we apply that plain meaning and end our inquiry." Ibid.; see also Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 260 (2020) ("[W]e need delve no deeper than the act's literal terms." (quoting State v. Gandhi, 201 N.J. 161, 180 (2010))).

Pursuant to JRSA, the "general responsibility for the proper operation of the retirement system is . . . vested in the State House Commission." N.J.S.A. 43:6A-29(a). The law further provides "[t]he State House Commission shall be and is hereby constituted the trustee of all the various funds established by this act." N.J.S.A. 43:6A-30(a); see also N.J.A.C. 17:10-1.1. The State House Commission is plainly a "board of board of trustees any State or locally-administered pension fund or retirement system created under the laws of this State." N.J.S.A. 43:1-3(b). As such, it is vested with the sole authority to review a member's retirement or disability application for honorable service, rendering Petitioner's jurisdictional argument futile. See O'Connell v. State, 171 N.J. 484,

488 (2002) ("A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.").

Moreover, N.J.S.A. 43:1-3(a) states "the receipt of a public pension or retirement benefit is hereby expressly conditioned upon the rendering of honorable service by a public officer or employee." Judges are "public officer[s]" or "employee[s]." Nothing in N.J.S.A. 43:1-3, enacted in 1995, L. 1995, c. 408, excludes Superior Court judges or the judicial pension system. The judicial disability retirement provision at issue in this case, N.J.S.A. 43:6A-12, was enacted over twenty years before N.J.S.A. 43:1-3; if the Legislature had intended to exclude judges, it could have done so easily. See Correa v. Grossi, 458 N.J. Super. 571, 580 (App. Div. 2019) ("The Legislature is presumed to be familiar with its existing enactments and is presumed to intend that its newer enactments be harmonized with the existing ones, in light of the Legislature's purpose.").

Petitioner next argues any honorable service review, if the statute is applicable to judges, must be performed by the Governor and the Supreme Court when the initial disability decision is made, not by the Board after the fact. This argument is belied by both the plain language of N.J.S.A. 43:6A-12, which

11

makes no mention of honorable service review, and the plain language of N.J.S.A. 43:1-3, which does not exclude judicial pensions from honorable service review or set forth a timeframe for that review. Petitioner relies on the use of the mandatory "shall" in the disability provision: "[I]f the Governor approves the report, the member shall be retired . . . ." N.J.S.A. 43:6A-12. This contention lacks merit because it ignores the clear language of N.J.S.A. 43:1-3, which mandates all public employees are subject to honorable service review and does not specifically exclude judges.

Honorable service review is a distinct process from the initial disability application. To accept Petitioner's reading of N.J.S.A. 43:6A-12 would ignore the "overriding principle of statutory construction[,which] compels that every effort be made to harmonize legislative schemes enacted by the Legislature." Richter v. Oakland Bd. of Educ., 246 N.J. 507, 538 (2021). In sum, N.J.S.A. 43:1-3 and N.J.S.A. 43:6A-12 involve distinct processes. N.J.S.A. 43:6A-12 sets forth a process to determine whether a judge is initially entitled to receive a disability pension. N.J.S.A. 43:1-3 provides the mechanism for an honorable service review by the pension administration to determine whether any public employee, including judges of the Superior Court, should forfeit their pension because of misconduct.

B.     Whether the Application of N.J.S.A. 43:1-3 Requires a Threshold Determination that the Disqualifying Conduct was Related to the Judge's Employment.

Petitioner next contends the Board erred as a matter of law in ordering pension forfeiture based on conduct unrelated to her judicial duties. According to Petitioner, N.J.S.A. 43:1-3 can never apply to misconduct unrelated to official duties. However, the statute makes clear that whether the conduct was related to the public employee's official employment duties is only one of the eleven factors to be considered, not a threshold determination as to whether an honorable service review may be conducted. See N.J.S.A. 43:1-3(c).

N.J.S.A. 43:1-3 codified our Supreme Court's decision in Uricoli v. Board of Trustees, Police & Firemen's Retirement System, 91 N.J. 62 (1982). See L. 1995, c. 408; Assemb. State Gov. Comm. Statement to A. No. 676 (April 20, 1994) (stating the bill codifies the "essence" of Uricoli). Uricoli involved a police chief who applied for accidental disability benefits. 91 N.J. at 65. After twenty-three years of service, he was convicted of "malfeasance in office" for a "ticket-fixing incident" in which he "illegally disposed of a careless driving ticket . . . issued to the son of a 'near and dear friend.'" Ibid.

In Uricoli, our Supreme Court cautioned "honorable service is an implicit requirement of every public pension statute, whether or not this conditional term

13

appears in the particular statute" and honorable service is required "without regard to whether the retirement is based on disability, age, or length of service." Id. at 66. The Court then decided how a public employee's misconduct should affect their pension rights. Id. at 77-78. The Court rejected a rule that any misconduct should "automatically" result in "absolute forfeiture" of a public employee's pension. Id. at 77. Instead, the court emphasized "flexibility and the application of equitable considerations" and devised an eleven-factor balancing test, which included the following:

> (1) the employee's length of service; (2) the basis for retirement, i.e., age, service, disability, etc.; (3) the extent to which the employee's pension has vested; (4) the duties of the particular employment; (5) the employee's public employment history and record; (6) the employee's other public employment and service; (7) the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated; (8) the relationship between the misconduct and the employee's public duties; (9) the quality of moral turpitude or the degree of guilt and culpability, including the employee's motives and reasons, personal gain, and the like; (10) the availability and adequacy of other penal sanctions; and (11) other personal circumstances relating to the employee bearing upon the justness of forfeiture.
>
> [Id. at 77-78.]

In applying these factors to Uricoli's case, the Court held total forfeiture was not warranted. Id. at 78. The Court noted the wrongfulness of Uricoli's ticket-fixing and its "direct and actual" relationship to his job duties. Id. at 79.

14

But the Court also weighed Uricoli's "[twenty] full years of honorable service" and the fact the conduct was not "pervasive or chronic," and noted there was no "personal gain" or "indication of venality." Ibid. Finally, the Court concluded "adequate penal sanctions" had already been applied, including Uricoli's termination, conviction, and sentence. Ibid.

In Corvelli v. Board of Trustees, Police and Firemen's Retirement System, the Court subsequently clarified that misconduct resulting in forfeiture need not be criminal. 130 N.J. 539, 552 (1992). The Court stated:

> Although Uricoli had been convicted of a crime, nowhere does our opinion in his case state that only criminal acts may constitute dishonorable service deserving of forfeiture. The term 'honorable service' as used in Uricoli and other opinions is sufficiently generic to encompass a broad range of misconduct bearing on the forfeiture decision, including but not limited to criminal conviction.

Uricoli's balancing test was later enacted, L. 1995, c. 408, and codified at N.J.S.A. 43:1-3, which authorizes the respective boards of the State's pension systems to weigh the eleven factors and, if necessary, order total or partial forfeiture of an employee's pension or retirement benefit. N.J.S.A. 43:1-3(b) to (c).

Petitioner's reliance upon Masse v. Board of Trustees, Public Employment Retirement System, 87 N.J. 252 (1981), in arguing that conduct unrelated to her

15

official judicial duties cannot form the basis for forfeiture pursuant to N.J.S.A. 43:1-3 is without merit. Not only was Masse a pre-Uricoli case, but N.J.S.A. 43:1-3 is clear that whether the misconduct was unrelated to employment is to be considered as only one of the factors. See N.J.S.A. 43:1-3(c)(8) (including as a factor "the relationship between the misconduct and . . . public duties."). Uricoli synthesized decades of precedent, including Masse, and concluded "in all cases, even where there is a relationship between the particular misconduct at issue and the performance of employment duties, a balancing approach is required in order to determine whether forfeiture is justified under all of the circumstances." 91 N.J. at 67-73, 77 (emphasis added).

After Uricoli, we reiterated that whether the misconduct was unrelated to official employment duties is simply one factor to be considered in the totality of the circumstances, not a threshold inquiry before the balancing test is applied. See T.J.M. v. Bd. of Trs., 218 N.J. Super. 274, 279 (App. Div. 1987) ("Uricoli explicitly states its test applies to "all cases" involving forfeiture of pension benefits." (quoting Uricoli, 91 N.J. at 77)). If an employee's misconduct is unrelated to one's job duties, that factor is considered favorably in the balancing process. See ibid. But it does not, as Petitioner argues, foreclose application of N.J.S.A. 43:1-3 altogether.

16

A-3054-23

C.    Whether the Board Acted Arbitrarily and Capriciously in Applying the N.J.S.A. 43:1-3 Factors.

Finally, Petitioner argues the Board arbitrarily and capriciously weighed the honorable service factors outlined in N.J.S.A. 43:1-3(c)(1) to (11) to mandate the forfeiture of her pension. After reviewing each factor individually, and the Board's weighing of the factors as a whole, we conclude the Board's decision to forfeit Petitioner's pension prospectively was not arbitrary or capricious. Contrary to Petitioner's claim, the Board properly applied the eleven-factor analysis according to the statute and relied on substantial evidence in reaching its forfeiture decision.

### 1. Factor One – the member's length of service

The Board found Petitioner earned two years and four months of JRS service credit based on her employment history and pension contributions, and she had barely begun her judicial service when she engaged in the misconduct at issue. Based on these circumstances, it concluded factor one weighed heavily against Petitioner. Without legal support, Petitioner argues the Board should have considered her "length of service" to be her seven-year judicial term, instead of her "length of pension service." "Service" is clearly defined in JRSA as "service rendered for which credit is allowed on the basis of contributions made by the State." N.J.S.A. 43:6A-3(r). Petitioner worked and made pension

17

contributions for only two years and four months of her judicial appointment. The Board correctly concluded she has a total JRS service credit of two years and four months.

We reject Petitioner's argument that she was deprived of the ability to make pension contributions over a fifty-four-month period during the pendency of her criminal proceeding. Petitioner could not sit as a judge while she was under criminal indictment.

### 2. Factor Two – the basis for retirement

The Board reasonably found factor two weighed against Petitioner because her disability retirement was based on a disability she asserts was caused, in part, by the very events at issue. Although Petitioner argues her disability was caused by Woodbridge law enforcement, who wrongly believed Petitioner engaged in official misconduct, the Board correctly relied on the Supreme Court's finding that Petitioner had committed violations of the Code of Jud. Conduct and had demonstrated a lack of candor to the tribunal. As part of the analysis, the Board applied the Supreme Court's rationale in Patterson v. Board of Trustees, State Police Retirement System, in which the Court found a state trooper ineligible for accidental disability retirement benefits based on a traumatic event that was caused, in part, by his own misconduct. 194 N.J. 29,

51-52 (2008). In ruling that the trooper could not "rely on the incident as the predicate for an enhanced public pension," the Court observed "[t]o rule otherwise would reward dereliction of duty." Ibid. The Board here found Petitioner's claim for lifetime benefits on this basis would "reward dereliction of duty," and the Legislature never intended to provide such a windfall. We perceive no error in the Board's reasoning.

3. Factor Three – the extent to which the member's pension has vested

Likewise, the Board correctly concluded factor three weighed heavily against Petitioner because she had not vested for any pension benefit other than disability retirement, such as service retirement under N.J.S.A. 43:6A-8; early retirement under N.J.S.A. 43:6A-10; or deferred retirement under N.J.S.A. 43:6A-11.

4-6. Factors Four through Six - the duties of the particular member; the member's public employment history and record covered under the retirement system; and any other public employment or service

The Board found Petitioner's duties and employment history weighed against her, given the significance of her position as a judge and the paucity of creditable service before the incident at issue in June 2013—a mere two months. We agree.

7. Factor Seven - the nature of the misconduct or crime, including the gravity or substantiality of the offense, whether it was a single or multiple offense and whether it was continuing or isolated

The Board concluded the nature and gravity of the offense weighed against Petitioner because her violations of the Code of Jud. Conduct were substantial and continued over a two-day period. Petitioner argues her misconduct occurred during an emotional time, and she did not have an obligation to advise law enforcement of the location of a known fugitive. However, seven years later, the Supreme Court, in finding she had violated canons of judicial conduct, specifically found she lacked candor to the tribunal, In re Brady, 243 N.J. at 420, and demonstrated little remorse even then, id. at 422.

8. Factor Eight – the relationship between the misconduct and the member's public duties

The Board also weighed this factor heavily against Petitioner. It found Petitioner was culpable of an egregious violation of judicial standards by elevating her personal relationship over her public duties. While she concedes she had an obligation to conform to the judicial canons, Petitioner continues to claim she had no obligation to advise law enforcement of the location of a criminal fugitive, demonstrating a patent lack of understanding of the role of a judicial officer. To be sure, not every violation of a judicial canon will subject

20

a judge to pension forfeiture or even dishonorable service review. However, a judge's long-standing documented lack of insight as to their role as a judicial officer in upholding the law may, in appropriate cases and following a robust fact-sensitive inquiry, subject that judge to pension forfeiture.

9. Factor Nine - the quality of moral turpitude or the degree of guilt or culpability, including the member's motives and reasons, personal gain and similar considerations

The Board noted the Supreme Court's finding that Petitioner acted not at the direction of the police, "but in the hope that she could assist [her boyfriend] and preserve their relationship while maintaining her judicial career." Id. at 417. The Board found the gain Petitioner sought was personal, though not monetary. Petitioner argues her infraction did not amount to "moral turpitude," especially given her emotional state at the time, but the Board reasonably rejected that claim, noting, as did the Supreme Court, id. at 422, a seeming lack of remorse on Petitioner's part about her actions in June 2013, even years later.

10. Factor Ten - the availability and adequacy of other penal sanctions

The Board considered Petitioner's argument that she had suffered enough due to the three-month, after-the-fact suspension imposed by the Supreme Court and the fifty-seven-month suspension during the pendency of her criminal case. The Board did not impose total forfeiture. It ordered the forfeiture of Petitioner's

A-3054-23

prospective pension benefits beginning on April 1, 2023, but allowed her to keep $189,000 in pension benefits received between January 2022 and April 2023 (amounting to three and one-half times the value of Petitioner's total pension contributions to JRS).

11. Factor Eleven - other personal circumstances relating to the member which bear upon the justness of forfeiture

The Board took specific note of the amount already expended by the pension system as compared to Petitioner's total pension contributions, reviewed mitigating factors considered by the Supreme Court and argued by Petitioner to the ACJC (including two adverse credibility findings by the Supreme Court), the lack of insight and remorse the Supreme Court and Board perceived on Petitioner's part, the stress this process caused Petitioner and her family, and the hardship on Petitioner if the Board sought to recover monies already paid to her. We see no reason to disturb these findings.

We conclude the Board reasonably weighed the N.J.S.A. 43:1-3 factors. The Board weighed "heavily" the fact Petitioner had only two years and four months of creditable service:

> This is not, like Uricoli, a case in which an expectation of pension benefits built over a long career of honorable service is forfeited over a single infraction, or one in which an early infraction is followed by a long period of honorable service. To the contrary, [Petitioner] had barely begun her service when she egregiously

violated the standards to which the public has a right to expect judges to adhere by failing to cooperate with police in their attempt to apprehend a fugitive accused of a violent crime.

The Board concluded "Petitioner's receipt, after dishonoring the bench just over two months into her relatively brief judicial service, of a lifetime pension amounting to three-fourths of her judicial salary would be an unwarranted windfall."

Moreover, as the Board noted, Petitioner was paid a monthly disability pension from January 2022 to April 2023, the point at which the Board forfeited her pension. The Board did not order total forfeiture, and the payments Petitioner received totaled $189,000, which more than compensated her for her pension contributions.

Therefore, considering all the circumstances, the Board did not act arbitrarily and capriciously in weighing the factors. It was reasonable to conclude the very short length of service, coupled with the serious breach of public trust committed by Petitioner, outweighed her entitlement to a lifetime pension. Our role is not to substitute our judgment for that of the Board but only to conclude whether its decision follows the law, is supported by substantial evidence, and is reasonable. In re Carter, 191 N.J. at 483.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3054-23